RECEIVED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

2008 JAN -7  P 3: 34

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

Ronald A. Hollon, Sr.,                          )
                                                )
        Plaintiff,                              )
                                                )
v.                                              ) Civil Action No. 2:06-CV-1099-WKW-CSC
                                                )
CSX Transportation, Inc.,                       ) Jury Demand
                                                )
        Defendant.                              )

### Plaintiff Hollon's Memorandum Brief in Opposition
### to Defendant's Motion for Summary Judgment

Comes now Plaintiff Hollon, by and through counsel, and files the following Brief in

opposition to Defendant's Brief in Support of Summary Judgment, stating as follows:

### I. Introduction

Plaintiff Hollon filed the instant action alleging against Defendant CSX Transportation,

Inc. various allegations of discrimination and or retaliation pursuant to the Age Discrimination in

Employment Act (ADEA) 29 U.S.C. 621 et seq.

Subject matter is proper for the United States District Court pursuant to 28 U.S.C. 1331.

Venue is proper in the United States Middle District of Alabama as most material events

occurred within the Middle District of Alabama.

Plaintiff Hollon has successfully exhausted all administrative prerequisites for this action.

## II. Factual Background

### Age, Experience and Education

Plaintiff Ronald A. Hollon, Sr., hereafter "Hollon" or Plaintiff was born on November 14, 1959 and was at all material times over forty (40) years old. (Hollon Affidavit para. 1).

Hollon had at all material times  twenty five (25) years of railroad transportation experience having been employed by Defendant CSX Transportation, Inc., (hereafter CSX) or a predecessor company since 1981.  While working at the Montgomery CSX Railroad Terminal he was employed as a Yardmaster for ten years, managing yard crews, train crews, mechanical crews and at times clerical personnel.  His ten years experience as Yardmaster involved his changing and adapting to evolving railroad related technology.  (Id. para. 4).

That at all times material Plaintiff Hollon had completed a one year program in accounting at Draughns Jr. College, Montgomery, Alabama, had completed a one year program  in Emergency Medical Services (EMS) at Trenholm Tech, Montgomery, Alabama, and had over two years of college class attendance at Auburn University at Montgomery and Troy State University of Montgomery.  (Id. para.5).

### Demotion of June 19, 2006

Plaintiff had been in good standing with Defendant CSX until June 19, 2006, when he was wrongfully demoted by Defendant CSX and taken out of service from his position of Terminal Trainmaster, Montgomery, Alabama, and thereafter placed in the lower position of Yardmaster.

2

By said demotion Plaintiff received an approximate twenty thousand dollars per year cut in pay, and, per year, he lost more than fifteen thousand dollars in bonuses. (Hollon Affidavit para. 10).

Plaintiff's demotion on June 19, 2006, by Defendant CSX from Terminal Trainmaster to Yardmaster, was an intentional act of age discrimination due to his age by Defendant CSX and or retaliation by Defendant CSX for his exercise of protected activity. (Id. para. 11).

Plaintiff signed a Federal Railroad Administration Remote Control Operator form for T.J. Dean with Dean's authority at the request of Dean, a Road Foreman at the Montgomery, Alabama, terminal on May 27, 2006, before said, June 19, 2006, demotion. Plaintiff had no knowledge, at the time he signed the RCO form, that any fact situation had not occurred that the form may have indicated had occurred and without said knowledge of any falsehood or alleged falsehood Plaintiff was not guilty of any ethical violation. In this matter, Plaintiff had nothing to gain nor obtain any advantage for himself. (Id. para. 12).

That on May 27, 2006, CSX needed a remote control operator ("RCO") to report for work in the Montgomery Terminal. No regular RCO's were available to report to work in Montgomery, so Hollon instructed the crew caller, a clerical railroad worker, to call J.R. Weeks who had previously worked as an RCO. Weeks told the crew caller that his Federal Railroad Administration certification card was still valid. Hollon did not know at that time that "certified" and "approved" were two different things when the crew caller told him that Weeks said he was "certified." Plaintiff did not have expert knowledge or special knowledge or training in the Federal Railroad Administration procedure for "approval" for an RCO card and what an RCO card entailed. Plaintiff, because of this, called T.J. Dean, one of the two Road Foremen of Engines at the Montgomery Terminal, to determine what to do. Dean told Plaintiff to sign the

3

RCO card for Dean. Hollon called Dean back to make sure Hollon had the authority to sign the RCO card for Dean. Dean told Plaintiff "yes," and to just go ahead and sign the card. Plaintiff understood he was performing a mere ministerial act, and; therefore, Plaintiff signed the RCO card for Mr. Dean. Dean was not Plaintiff's supervisor, but Dean was superior to Plaintiff in his knowledge of the RCO process, and Dean was a parallel manager to Plaintiff with responsibility for train operations. Plaintiff Hollon did not attempt to circumvent the Federal Railroad Administration regulations (which he later learned applied to the RCO process), but on the contrary, Plaintiff made every effort to comply with any and all regulations that might apply. There was no harm done, and the Federal Railroad Administration found there was no violation regarding Hollon having signed for Mr. Dean on May 27, 2006. No CSX ethical breach occurred either, since Plaintiff had no intent to falsify a document or received any gain or benefit for the action. (Id. para. 13).

That on June 19, 2006, Defendant CSX, by and through its agents and or employees, Rod Workman and Jack Frost accused Hollon of "forging," etc. another employee's name [T.J. Dean] to a document which was a pretext for its action of wrongfully demoting Hollon. (Id. para. 14).

That Plaintiff did not ever consider contacting Wayne Powe to be used as an RCO operator on the date he signed for Mr. Dean. To the best of Hollon's knowledge, Wayne Powell was not, nor ever had been, a Road Foreman of Engines as per Defendant's Brief. (Id. para. 15).

That Hollon has never been an engineer, remote control operator, or a road foreman of engines. Hollon deferred to the proper authority about this matter, to Mr. T.J. Dean, Road Foreman of Engines. Being instructed by T.J. Dean, the proper authority, Hollon signed the remote card. (Id. para. 16).

4

That in the past, Hollon has been instructed by division manager Rod Workman, Director

Train Operations, Ken Dziwulski, and other Trainmasters to log in trains that allegedly arrived in

Montgomery, Alabama, though the trains were actually located at Deatsville, Elmore, Mt. Meigs,

or even McGhees, Alabama. In those false, fraudulent or forged reporting scenarios, no adverse

action was taken against CSX employees or management for authorizing the "false" documents.

Hollon had also been instructed at other times to change times on train departures and arrivals by

various CSX superiors or managers who were treated with impunity by CSX and not punished.

Thus based on several prior falsification scenarios involving CSX Managers, the so called

"falsification" of an RCO card by Hollon was a pretext to demote Hollon and deny him

promotions. (Id. para. 17).

## Positions Applied for by Plaintiff

### A. Trainmaster (Montgomery)

Plaintiff Hollon applied for the position of Trainmaster at Montgomery in 2006. CSX

required five years of related experience for said position whereas Hollon had approximately

twenty five (25) years. The Trainmaster position required that the applicant must be

knowledgeable in accident and derailment investigations, competent in operating rules and

practices, and proficient with computers, all qualifications which Hollon met or exceeded. Mr.

Jason Tipton, under 40 years old, was hired for said position in 2006, but Mr. Hollon, due to his

much greater experience, was equally or better qualified than Mr. Tipton. (Id. para. 5).

### B. Assistant Terminal Superintendent (Atlanta)

Plaintiff Hollon applied for the Assistant Terminal Superintendent position open in April

5

2006. A younger individual, Mr. Terrance Walton, with only ten years experience, compared to Hollon's twenty five years was hired despite Hollon's better qualifications. (Id. para. 6).

### C. Trainmaster (Pensacola)

Plaintiff Hollon applied for said Trainmaster position, open in May 2006, and was equally or better qualified than the much younger recipient of said position. Plaintiff was never notified of an interview or involved in an interview procedure by CSX. (Id. para. 7).

### D. Trainmaster (Mobile)

Though not actionable in this case, but as a matter of pattern or practice, Plaintiff had applied for and been well qualified for a 2000 opening for Trainmaster in Mobile, Alabama. (Id. para. 8).

### E. Trainmaster Pool (Mobile)

Though not actionable in this case, but as a matter of pattern or practice, Plaintiff had applied for a Trainmaster Pool position in 1997 in Mobile, Alabama, and was not considered for the position. (Id.).

### Post June 19, 2006, Promotions

That Hollon applied for and sought numerous promotions after his June 19, 2006, exercise of protected ADEA activities, etc. which included presentment of proposed EEOC Charges on June 19, 2006. He was as well or better qualified for all positions than the younger persons who got the promotions. Said promotions ranged from Trainmaster positions to Labor Relations Management Trainee to Assistant Terminal Superintendent, etc. (Id. para. 22).

### III. Argument

### (A) Standard of Review

Under Rule 56( c) of the Federal Rules of Civil Procedure, summary judgment is proper "(i)f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party or movant asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those [admissible] portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting admissible evidence showing there is no dispute of material fact, or by showing, or pointing out, to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Id. at 322-324, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed. 2d 538 (1986). On the other hand, the evidence of the non movant must be believed and all justiciable inferences must be drawn in its

favor. <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## (B) U.S. Supreme Court Directs  that Rule 50

### Requires Relevant Factual Questions to

### Be Decided by Jury

In <u>Reeves</u> v. <u>Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 120 S.Ct. 2097, 2102, 147 L.Ed. 2d 407 the Supreme Court held that the Fifth Circuit, misapplied the standard of review dictated by Rule 50 FRCP.  The Supreme Court was critical of the Fifth Circuit for misapplying Rule 50 in a very similar factual scenario that Defendant CSX is inviting the Middle District Court to do in Hollon's case.  (Defendant's Argument Brief pp. 13-25).

The Supreme Court in <u>Reeves</u> reversed the Fifth Circuit which "ignored" evidence showing that Chestnut had made derogatory age-based comments at Reeves and held that Chestnut had singled him out for harsher treatment than younger employees.  (<u>Id</u>. at 2101).

The Supreme Court cited very analogous evidence facts in <u>Reeves</u> that the employer was not entitled to summary judgment or judgment as a matter of law pursuant to Rule 50 FRCP.  The employer had made statements that he had come over on the "Mayflower" that he was "too damn old to do [his] job."  (<u>Id</u>. at 2110).  Issues were factually raised by the Petitioner that showed that Chestnut was the actual decision maker, contrary to the Defendant's allegations.  (<u>Id</u>. at 2111). Evidence was also raised by theemployer only as to inaccuracy of records rather than their alleged falsification (<u>Id</u>.).  All of these factual scenarios are directly analogous to <u>Hollon's</u> presented

8

factual scenarios.

> Based on the facts in <u>Reeves</u> the Supreme Court held:

>> Given that petitioner established a prima facie case of
>> discrimination, introduced enough evidence for the jury to reject
>> respondent's explanation and produced additional evidence of age-
>> based animus there was sufficient evidence for the jury to find that
>> respondent had intentionally discriminated. (<u>Id</u>. at 2112).

In the instant case Plaintiff Hollon presents evidence, both direct and circumstantial

evidence very much like the evidence found in <u>Reeves</u>. First ageist statements were made by Rod

Workman to Hollon, namely that young manager trainees had a bright future, with Workman's a

contrasting absence of such favorable statement to Mr. Hollon, but with Workman's added dig

into Hollon with Workman's question as to Hollon's age. Secondly Hollon presents evidence

that he was authorized to sign for Dean the RCO card by Dean, that others had not been charged

for similar incidents and that at no time was there any CSX evidence of falsification of

documents.

Finally, like the <u>Reeves</u> facts, Hollon presents evidence that Rod Workman was directly

involved and a part of the decision making process, involving Hollon's demotion, that it was

Workman who called in Hollon and another older employee, T.J. Dean, into a conference on June

19, 2006, and it was Workman who personally said, "I am relieving you [Hollon] of your

Trainmaster position for falsification of the RCO card."

All of these factual issues within Hollon's case are by law per <u>Reeves</u> within the purview

of a jury and are not appropriate for a Rule 50 determination as held by the Supreme Court (<u>Id</u>.).

## (C) Burden Shifting Framework for

### ADEA Claims

A plaintiff in an ADEA discrimination case maintains the ultimate burden of proving that the adverse employment decision was made because of intentional discrimination. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 134, 120 S.Ct. 2097, 147 L.Ed. 2d 407.

Although the Supreme Court previously established the basic allocation of burdens and order of proof in disparate treatment cases, *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), as modified by *Desert Palace v. Costa*, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84, 2003), that burden shifting scheme applies only in cases where there is no direct evidence of discrimination. *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).

Pursuant to *McDonnell Douglas* and *Burdine*, etc. a plaintiff first has the burden of proving by a preponderance of evidence a *prima facie* case of discrimination. Second, once the plaintiff proves a *prima facie* case, the burden of production shifts to the defendant to articulate legitimate, nondiscriminatory reasons for its employment decision. Finally, if the defendant carries its burden, the plaintiff must *either* prove by a preponderance of the evidence that the alleged legitimate reasons offered by the defendant are merely a pretext for discrimination *or* present sufficient evidence, of any type, for a reasonable jury to conclude that discrimination was a "motivating factor" for the employment action, even though defendant's legitimate reasons may also be true or have played some role in the decision. *McDonnell Douglas*, 411 U.S. at 802-05, 93 S.Ct. 1817; *Burdine*, 450 U.S. at 252-54, 101 S.Ct.1089; *Desert Palace*, 539 U.S. at 101-02,

123 S.Ct. 2148.

## (D) <u>Mc Donnell Douglas Corp</u>. v. <u>Green</u>

## Evidential Framework for Proof of Discrimination

Where a plaintiff seeks to prove intentional discrimination by using circumstantial evidence of intent, the court may apply the framework first set out by the United States Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed. 2d 668 (1973). Under this framework, the plaintiff must establish a prima facie case of discrimination. (<u>Id.</u> 411 U.S. at 802, 93 S.Ct. 1817).

The United Stated Supreme Court, in this seminal case for enforcement of Title VII, later extended to the ADEA, stated that in a discrimination case the complainant must carry the initial burden of establishing a prima facie case. <u>McDonnell Douglas Corp. v. Green</u> 411 U.S. 801, 802; 93 S. Ct. 1817, 1824 (1973). The Eleventh Circuit stated that this can be done under the ADEA by showing:

> (1) That he is a member of the protected group between the ages of forty (40) and seventy (70);
>
> (2) That plaintiff applied for and was qualified for a position;
>
> (3) That despite his qualifications he was rejected;
>
> (4) And, that a substantially younger person filled said position or that the position remained open, and the employer continued to seek applicants of similar positions.
> <u>Early</u> v. <u>Champion Int'l. Corp.</u>, 907 F2d 1077, 1082 (11th Cir. 1990).

11

In the instant action Plaintiff Hollon has shown a prima facie case for age discrimination in each hiring scenario, positions 1 - 4, listed and supported in the statement of facts above. Furthermore, pursuant to Reeves v. Sanderson Plumbing Products, Inc., 120 S.Ct. 2097, 2101 which cited St. Marys Honor Center v. Hicks, 1135 Ct. 2742 this Honorable Court should find intentional discrimination because of the "fact finders disbelief of the reasons put forward by the defendant together with the elements of the prima facie case." (Id.) Also under the facts Plaintiff Hollon has been rejected, time after time, for railroad positions by CSX and there are always empty excuses and unsupportable reasons for his rejection, often without CSX even presenting in the cases the extent of the qualifications of the person chosen for the position, as has been in the instant case.

The same application of St. Marys to show pretext where there is a showing of "mendacity," occurs with Hollon's June 19, 2006, demotion where: (1) he was authorized to sign for Dean; (2) no adverse federal agency finding was issued regarding the incident; (3) Plaintiff Hollon never intentionally did anything false or fraudulent to trigger any "ethical" charges by CSX; (4) Hollon did nothing for his own gain in the March 27, 2006, RCO card scenario to trigger an "ethical charge" but instead was trying to promote the ongoing railroad operations of Defendant CSX; (5) Hollon had a history of being passed over for positions and complaining about said denials of promotions and last but not least (6) Workman and other CSX managers over Hollon had a history or pattern or practice of directing subordinates, including Plaintiff Hollon to falsify, forge or create fraudulent documents at CSX's Montgomery facility and there was never any action taken against CSX employees or management for this practice. (Id. para. 10-17; 5-9; 21-22).

12

**Plaintiff Hollon has Presented**

**Unrefuted, Direct and or Circumstantial**

**Evidence of Age Discrimination in**

**His Demotion of June 19, 2006**

Plaintiff Hollon was demoted from his position of Trainmaster on June 19, 2006, in a meeting conducted by Rodney Workman where he informed Hollon, "I am relieving you of your Trainmaster position for the falsification of the RCO card." (Id. para. 14).

Mr. Rodney Workman was integrally involved in the demotion/termination process of Mr. Hollon though the Defendant alleges the ultimate decision to demote/terminate Mr. Hollon came from Mr. Mike Pendergrass (Defendant's Brief, Pendergrass Decl para. 4-6, etc.). See e.g. Glanzman v. Metropolitan Management Corp., 391 F3d 506, 513 which held that a jury could easily find a manager had at least partially been a participant in an adverse employment decision. (Id.). See also Reeves above.

In a meeting in Spring 2006 in Montgomery before Mr. Hollon's June 2006 demotion, Mr. Workman addressed CSX employees, including two younger management trainees in their twenties or thirties. Mr. Workman looked directly at the young trainees and stated to them:

"You-all have a bright future with this company." (Emphasis added).

(Hollon depo. pp. 185 ll 20-23, p. 186 ll 1-23, p. 187 ll 1-23).

Plaintiff Hollon was also present and shortly after his addressing his comment about the trainees' "bright future" Mr. Workman asked Hollon how old he was, and Hollon was the only person who Workman asked about his or her age at the meeting. Mr. Hollon replied to Mr.

13

Workman he was a "little older than the Terminal Manager." (Id.) [The Terminal Manager was in his thirties at that time]. (Id.)

When deposed about this scenario of ageist statements and inquiry as to Mr. Hollon's age, Mr. Workman could not refute Mr. Hollon's memory of this meeting or as to what Mr. Workman had said at the meeting. (Workman's depo. p. 52 ll.3-23).

There is no stray or incidental unrelated or "attenuated" remark involved here when in a direct contrast to younger manager trainees, employees are told by Rod Workman they have a "bright future." In stark contrast no such favorable age remark was made by Workman to the much older Plaintiff Hollon, but instead Hollon was asked his age by Workman and no other individual at the meeting was asked by Workman that question about age. (Hollon depo. pp185-186, 187, ll. 11-2, 188, 11-2).

In an extremely analogous factual setting of ageist statements an exchange took place between a manager and employer as follows in Fakete v. Aetna, 308 F3d 335 (3rd Cir. 2002):

> Aetna reorganized its audit department in July 1998. After the reorganization Thomas Larkin announced that Fakete would be reporting to him. Sometime during the end of July or the beginning of August 1998, Fakete spoke with Larkin. Fakete inquired about his future with the company. According to Fakete, Larkin responded that "the new management [which included Larkin]- that it would be favorable to me because they are looking for younger single people that will work unlimited hours and that I wouldn't be happy there in the future." A few months later, Larkin issued Fakete a written warning alleging unexplained absences from the workplace. Larkin threatened to place Fakete on "probation" if he did not explain future absences, obtain Larkin's approval before changing his travel plans, and provide Larkin a daily summary of the tasks he completed. On December 7, 1998,three months before Fakete's pension would have vested, Larkin fired him, charging that he violated the terms of the warning, falsified travel expense reports, and failed to reimburse Aetna for personal phone calls charged to his company card.

Id. at 336-337 (3rd Cir. 2002). (Emphasis added.).

14

In <u>Fakete</u> the Court expressed that:

> Larkin's statement told Fakete unambiguously that Larkin viewed
> him as a less desirable employee because of his age. (<u>Id</u>. at 340).

The Court in <u>Fakete</u> went on to hold:

> <u>Finally we cannot dismiss the statement as "merely random office</u>
> <u>banter."</u> Robin v. Espo Eng'g Corp., 200 F3d 1081, 1089 (7th Cir.
> 2000) or as innocuous "controversial jabber [] in a social setting."
> Hoffman v. MCA, Inc., 144 F3d 1117, 1122 (7th Cir.) as Larkin
> informed Fakete of his preference for "younger" employees in a
> serious one-on-one conversation about Fakete's future under
> Larkin's watch. (<u>Id</u>. p. 340). (Emphasis added.)

Thus it is clear that Plaintiff Hollon has proved his case and met all ADEA elements of a

prima facie case, he has made a clear showing of pretext, and he has made the ultimate showing of

intentional discrimination pursuant to the <u>McDonnell Douglas</u> framework to prove intentional

discrimination which has been extended to ADEA claims.

## (E) Plaintiff Hollon's Retaliation Claims

Defendant CSX states in its brief a critical non coincidence, a clear causal connection

retaliation factor scenario namely:

> On May 27, 2006, the same day that Hollon emailed Workman and Fruilla about
> his non selection for the Montgomery Terminal Manager, Atlanta Assistant
> Terminal Superintendent and Pensacola Trainmaster positions- CSXT needed a
> remote control operator ("RCO") to report to work at its Montgomery Terminal.
> (PD at 103:8-16, 136:20-22). (Defendant's Brief p. 9). (Emphasis added.).

That section of Defendant's Brief was entitled "Hollon Falsifies an FRA Certification

Card." (<u>Id</u>. at p. 9 of Defendant's Brief).

It becomes clear the two emails of May 27, 2006, were an ongoing part of the protected

activity triggering events for the CSX FRA Certification card allegations against Hollon an alleged RCO card falsification about that same day. Mr. Hollon had been in the process of exercising his protected rights in complaining and criticizing the fact that he, an older CSX Manager, was being illegally passed over for promotions and when he got no satisfaction about the matter he issued said emails on May 27, 2006, which were known to and received by Workman on May 27, 2006. After a union member questioned several days later the FRA Certification card (RCO card) signing Workman then had an alleged reason to punish Hollon who had sent said email on May 27, 2006; email that questioned CSX's decisions involving Hollon's non promotions.

In the interim within a close time frame, Hollon had made it clear to others in management, etc. at CSX that he was complaining of not getting promotions due to age discrimination. (Hollon Affidavit para. 18).

In a retaliation claim under the ADEA, as under Title VII, a claimant is required to produce a showing of:

(1) Participation in actions protected by the statute;

(2) An adverse employment action, and

(3) A causal link between the protected actions and the adverse employment action.

(Bonham v. Regions Mortgage, Inc., 129 F Supp 1315, 1328 (M.D. 2001).

In analyzing a "causal link" Bonham stated:

> The Eleventh Circuit has explained its interpretation of the "causal link" prong of a retaliation claim not as " the sort of logical connection that would justify a prescription that the protected participation in fact prompted the adverse action," since that could require direct evidence of **\*1327** discrimination. *Simmons v. Camden County Bd. Of Educ.*, 757 F.2d 1187, 1189 (11th Cir.), *cert. denied,* 474 U.S. 981,106 S.Ct. 385, 88 L.Ed.2d 338 (1985). Instead, "the 'causal link' element [requires] merely that the plaintiff establish that the protected activity and the adverse action were not wholly unrelated." *Simmons*, 757 F.2d at 1189; *see also Bigge v. Albertsons, Inc.*, 894 /f,2d 1497, 1501 (11th Cir. 1990). At a minimum, the plaintiff must demonstrate that his employer knew of his participation in the protected activity at the time of the adverse employment action. *See Goldsmith* v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993).

Plaintiff Hollon's above cited references to Mr. Workman's statements to younger

management trainees with their "bright futures," etc. constitute "direct" evidence of

discrimination.

As per the Court in <u>Bonham</u> v. <u>Regions Mortgage, Inc.</u>, 129 F.Supp. 2d 1315 direct

evidence:

> [M]ust go beyond that which reflects a general legally impermissible bias and instead must establish without a need of inference or presumption, that bias played a role in the decision making process and had a determinative influence on the outcome.
>                                         (<u>Id</u>. at 1324).

Here there is no need for debate or interpretation to show specific age bias - here the

young managers are told emphatically they have a bright future whereas Hollon was not told this

and instead he was asked how old he was and Hollon was the only person asked this ageist

question, clearly direct evidence.

## Conclusion

For the above stated facts and argument, the Defendant's Motion for Summary Judgment is due to be denied by this Honorable Court.

**Note**: Plaintiff Hollon hereby incorporates by reference all documents, exhibits, declarations and depositions heretofore filed by the Defendant in support of its Motion for Summary Judgment to support the instant Brief.

Respectfully submitted,

Gary E. Atchison (ATC004)
Attorney for
Plaintiff Ronald A. Hollon, Sr.

**Of Counsel:**
PO Box 2002
492 S. Court St.
Montgomery, AL 36102-2002
(334) 262-7232

## Certificate of Service

I hereby certify that I have sent a copy of the above Brief by placing it in the US Mail, first class prepaid, to the following on the _____ of January, 2008:

Weyman T. Johnson, Jr., Esq.
William C. Barker, Esq.
Paul, Hastings, et al., LLP
600 Peachtree Street, N.E.
Suite 2400
Atlanta, GA 30308

Gary E. Atchison

18

RECEIVED

IN THE UNITED STATES DISTRICT COURT
2008 JAN FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DEBRA P. HACKETT, CLK
Ronald A. Hollon, Sr., U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

|                              |   |                                            |
|------------------------------|---|--------------------------------------------|
| Ronald A. Hollon, Sr.,       | ) |                                            |
|                              | ) |                                            |
|    Plaintiff, | ) |                                            |
|                              | ) |                                            |
| v.                           | ) | Civil Action No. 2:06-CV-1099-WKW-CSC      |
|                              | ) |                                            |
| CSX Transportation, Inc.,    | ) |                                            |
|                              | ) |                                            |
|    Defendant. | ) |                                            |

**Plaintiff Hollon's  Affidavit in Reply to
Defendant's Motion for
Summary Judgment**

I, Ronald A. Hollon, Sr., give this Affidavit in the above styled case and do hereby freely

declare, depose and swear as follows:

(1) That during all times material to the instant action I  was over forty (40) years old; my

date of birth is November 14, 1959.

(2)  That I  have been employed since 1981 by Defendant CSX Transportation, Inc.,

hereafter "CSX," or a predecessor railroad company which later became CSX.

(3) That I  have 25 years of railroad transportation experience at all material times.  I have

approximately 10 years in the railroad clerical field working every clerical position in the

Montgomery CSX Terminal.  I worked 10 years as a Yardmaster in the CSX Montgomery

Railroad Terminal.  The Yardmaster manages yard crews, train crews, mechanical personnel and

the people located in the terminal.

(4) That in the Yardmaster position, a front line management position, in my roughly 10

years as a Yardmaster in the Montgomery Railroad Terminal, I had the experience of changing

and adapting to evolving railroad technology.

(5) The Terminal Manager's position in Montgomery, Alabama, open, in March 2006, that I had applied for, would have been a promotion for me. A degree was stated as preferred but not a requirement. Only a high school diploma or GED was required. At that time I had completed a one year program in accounting from Draughons Jr. College Montgomery, Alabama, and I had a one year certificate in EMS from Trenholm Tech Montgomery, Alabama. I also successfully attended college classes at Auburn University at Montgomery and Troy State University in Montgomery for over two years. The Terminal Manager's position at Montgomery required at least 5 years experience in the transportation department, whereas I had a total of 25 years experience in the transportation department. Furthermore, as per CSX, the applicant had to be knowledgeable in accident and derailment investigations, competent in operating rules and practices, and proficient with computers. I met or exceeded all of the said requirements for the position of Terminal Manager. Said position was given to Mr. Jason Tipton, under forty (40) years old, who had far less experience than I had, and I was equally or better qualified for said position than Mr. Tipton.

(6) That for the Atlanta Assistant Terminal Superintendent position, open in April 2006, I had 25 years experience while Mr. Terrance Walton, several years younger than I, the person selected by CSX for the position, had only approximately 10 years of experience. I met or exceeded all requirements for said position.

(7) That for the Pensacola Trainmaster position, open in May 2006, I was never notified of an interview by home phone, cell phone, work email, US Mail, nor even at work by CSX, yet I met or exceeded all requirements for said position based on experience and education. A younger, less qualified person was hired or promoted to this position.

(8) That historically I had applied for various positions outside the Montgomery Terminal in order to broaden my experience as a manager. I applied for Trainmaster position in 2000 in Mobile, Alabama, and I had applied earlier for a Trainmaster Pool position in 1997 in the Mobile Division (presently the Atlanta Division). Due to the fact I met or exceeded qualifications for said positions, CSX could have placed me in one of several Trainmaster Pool positions at various locations in the Mobile Division, which were then open.

(9) That contrary to the claim by the Defendant CSX, my past experience in a non-management position was to be considered when I applied for management positions based on CSX's pattern and practice when it reviewed qualifications for a promotional management position otherwise no one with only non management experience would have ever been named as a CSX manager. For example, for an individual seeking a Road Foreman of Engines position, his past experience and the requirement that he had been an engineer would have been a consideration by CSX based on its own promotional pattern and practice criteria, which I knew of and observed.

(10) That I had been in good standing and had good evaluations with Defendant CSX until June 19, 2006, when I was wrongfully demoted and taken out of service from my position of Terminal Trainmaster, Montgomery, Alabama, and thereafter placed in the lower position of Yardmaster. By said demotion I received an approximate twenty thousand dollars per year cut in pay, and I lost more than fifteen thousand dollars per year in bonuses.

(11) That my demotion by Defendant CSX from Terminal Trainmaster to Yardmaster, was an intentional act of age discrimination by Defendant CSX due to my age known to CSX and or because of retaliation by Defendant CSX for my exercise of protected activity under the ADEA.

(12) That, with Mr. T.J. Dean's authority, on May 27, 2006, I signed for Mr. Dean, at the

request of Dean, a Road Foreman at the Montgomery, Alabama, terminal, a Federal Railroad Administration Remote Control Operator form before my subsequent demotion on June 19, 2006. I had no knowledge, at the time that I signed the RCO form, that an alleged fact situation had not occurred, which the form indicated may have occurred, and without said knowledge of any falsehood or alleged falsehood, I was not guilty of any ethical violation as set forth by CSX's written ethical standards. In this matter, I had nothing to gain nor any advantage for myself by my signing the RCO card for Mr. Dean at his request, and I was only trying to facilitate the ongoing CSX railroad operation.

(13) That on May 27, 2006, CSX needed a remote control operator ("RCO") to report for work in the Montgomery Terminal. No regular RCO's were available to report to work in Montgomery, so I instructed the crew caller (a clerical railroad worker) to call J.R. Weeks, Line of Road Trainman, who had previously worked as an RCO. Mr. Weeks told the crew caller that his Federal Railroad Administration certification card was still valid. I did not know nor had any knowledge at that time that "certified" and "approved" were two different things when the crew caller told me that Mr. Weeks said he was "certified." I did not have expert knowledge or special knowledge or training in the Federal Railroad Administration process of "approval" for an RCO card or what an RCO card involved. So on May 27, 2006, I called Mr. T.J. Dean, one of the two Road Foremen of Engines at the Montgomery Terminal, to determine what to do. Mr. Dean authorized me and told me to sign the RCO card for him. I called Dean back to make sure I had the authority to sign the RCO card for him. Dean told me yes, and to just go ahead and sign the card. At the time, I understood I was performing a mere ministerial act; therefore, I signed the RCO card for Mr. Dean. Dean was not my supervisor, but he was clearly superior to me in his knowledge of the RCO process, and he was a manager, parallel to me, with responsibility for train

operations. I did not attempt to circumvent the Federal Railroad Administration regulations (which I later learned applied to the RCO process), but on the contrary, I made every effort to comply with any and all regulations that might have applied. There was no harm done, and the Federal Railroad Administration subsequently found there was no legal or regulatory violation regarding my signing for Mr. Dean on May 27, 2006, and it never took any action against me or anyone at CSX about this matter. No CSX ethical breach occurred either, since I had no intent to falsify a document, nor has there been any proof of such an intentional falsification presented by CSX.

(14) That on June 19, 2006, Defendant CSX, by and through its agents and or employees, namely Rod Workman and Jack Frost, accused me of "forging," etc. another employee's name to the March 27, 2006, RCO document which was a pretext for its action of wrongfully demoting me from Terminal Trainmaster to Yardmaster. Workman said to me, "I am relieving you of your Trainmaster position for the falsification of the RCO card." When I was demoted, I was replaced by a much younger man who was 28 years old when he was placed in my former position.

(15) That I did not need to contact "Wayne Powe" on May 27, 2006, the date I signed for Mr. Dean. To the best of my knowledge, "Wayne Powell" referenced in Defendant's Brief, page 10, was not, nor ever had been, a Road Foreman of Engines, and thus a Mr. "Powell" could not be involved in this scenario at all.

(16) That I have never been an engineer, remote control operator, or a road foreman of engines. On May 27, 2006, I deferred to the proper authority about this matter, Mr. T.J. Dean, Road Foreman of Engines. Then being instructed by T.J. Dean, the proper authority, I signed for Mr. Dean the remote card at his request.

(17) That in the past, I have been instructed by Division Manager Rod Workman, Atlanta

Division; Director of Train Operations, Ken Dziwulski, and other Trainmasters to log in trains

that allegedly arrived in Montgomery, Alabama, even when the trains were actually at Deatsville,

Elmore, Mt. Meigs, or even McGhees, Alabama. In those false or fraudulent or "forged"

reporting scenarios no adverse action was taken against the said CSX employees authorizing the

"false" document reporting. I have also been instructed on other occasions to change times on

train departures and arrivals by various CSX superior managers who were treated with impunity

by CSX and not disciplined in these situations. Thus based on several falsification, etc. scenarios

involving CSX Managers, the so called forging or falsification of an RCO card by me was only a

pretext by CSX to demote me and otherwise deny me promotions subsequent to June 19, 2006..

(18) That prior to my signing, for T.J. Dean the RCO card on May 27, 2006, I had engaged

in protected activity, regarding being passed over for said April and or May 2006 positions. I

complained about age discrimination to various CSX employees including Melvin Murry, Line of

Road Trainmaster. M and M, Flomaton, Alabama, Jerry Holsworth, Road Foreman of Engines,

Pensacola, Angie Averitte,etc. Furthermore, it was widely known that I was critical of CSX and

disgruntled for being passed over for promotions at my age over 40. On June 19, 2006, I

presented a draft of my EEOC Charge to Rod Workman and Jack Frost, all instances of my

exercise of protected activity under the ADEA.

(19) That prior to said June 19, 2006, demotion I had been improperly and illegally passed

over during April and or May 2006 for positions of Trainmaster, Customer Service, etc. by

Defendant CSX, and I was as well or better qualified for said positions than younger, under- 40-

years- old employees who were placed in said positions by Defendant CSX

(20) That when I applied for the Assistant Manager of Customer Operations Jacksonville,

Florida position, the position was listed in the CSX gateway for open positions. Applications

were still being taken when I applied. Looking at the applicants and their credentials for this position, the most qualified individual was not selected according to the selection process that CSX claims to use, but instead Timothy Grayson, in his twenties, approximately with a year of college, and having far less experience than me was chosen in March 2006, whereas I was much better qualified for the position.

(21) That Defendant CSX has at all material times had a pattern and practice of intentional discrimination against me or older employees, over the age of forty (40) years old.

(22) That subsequent to June 19, 2006, I had been further denied promotion to other higher level positions by Defendant CSX, and that I was as well or better qualified based on my previously cited credentials, than the younger or under-40-year-old employees who received said positions. That I have been denied promotions subsequent to June 19, 2006, due to age discrimination and or retaliation by Defendant CSX and was not interviewed. That after I made complaints of age discrimination to CSX orally and via a proposed EEOC Charge on June 19, 2006, I was passed over for numerous promotions all of which I met or exceeded CSX requirements or qualifications. In all instances people younger than I were hired, none of which were better qualified than I. Said positions were Management Trainee Trainmaster 02779; Mgr. Operations Planning, location code 00607; Dir. Train Operations, location code 000654; Terminal Manager, location code 01458; Mgr. Coal Operations, location code 01695; Trainmaster Terminal, location code 00523; Operations Mgmt. Trainee; Labor Relat. Mgmt. Trainee, location code 00607; Damage Prev. Mgmt. Trainee; Commercial Mgmt. Trainee; Intermodal Mgmt. Trainee; Trainmaster, location code 01530; Trainmaster Trng. Development, location code 02779; Asst. Terminal Superintendent, location code 00817; Trainmaster, location code 01506; Trainmaster Terminal, location code 00545; and, Mgr. Locomotive Distribution, location code 00654.

(23) That as a result of the intentional acts and or omissions of Defendant CSX, as herein alleged, I have lost substantial wages, lost substantial benefits including retirement, lost promotions, incurred mental anguish, attorneys fees, cost of litigation, etc.

(24) That I have exhausted all required administrative legal remedies through the Equal Employment Opportunity Commission (Charge No. 420-2006-03422), and have received a Right to Sue Letter, and I timely filed the instant action against Defendant CSX.

Further Affiant sayeth not.

Done this __7th__ day of January 2008 at Montgomery, Montgomery County, Alabama.

*Ronald A. Hollon, Jr.*

Ronald A. Hollon, Sr.
Affiant

## Notary

Before me the above signed Ronald A. Hollon, Jr. appeared, identified himself and signed the foregoing Affidavit in my presence on the date shown.

Notary _Kathryn Kelley Blount_
My commission expires _June 27, 2011_