IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| Ronald A. Hollon, Sr., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:06-CV-1099-WKW-CSC |
| | ) | |
| CSX Transportation, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

## REPLY  IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### I.    INTRODUCTION

Despite its reliance on a conclusory and contradictory affidavit, illogical inferences, and a series of unsubstantiated speculations, Plaintiff Ronald A. Hollon's Memorandum Brief in Opposition to Defendant's Motion for Summary Judgment (Docket No. 25) [hereinafter "Pl. Opp."] is more remarkable what it does not say than for what it does say.

Remarkably, Hollon doesn't deny that he committed the act for which he was demoted (i.e., signing another employee's name to a document regulated by the federal government and thereby falsely certifying the occurrence of an event that had not yet occurred).  Instead, Hollon asserts that he should not have been demoted because *he didn't mean* to do anything wrong and because CSXT was never fined by the federal government as a result of his action.

Equally remarkably, Hollon doesn't even attempt to demonstrate a discriminatory or retaliatory animus on the part of the CSXT managers who actually made the promotion and demotion decisions at issue in this case.  Rather, Hollon hinges his entire lawsuit on **one** facially innocuous comment made by a CSXT management employee who is seven years older than Hollon and who was

not the decision-maker for the demotion decision or any of the promotion decisions at issue in this case.

Hollon's reliance on these arguments is misplaced, as neither the comments he alleges in this case nor his own subjective feelings about the fairness of his demotion are sufficient to create a genuine issue of material fact. Indeed, notwithstanding Hollon's attempt to re-write the facts in the record through the affidavit attached to his brief, nothing in the record even remotely suggests that Hollon was denied a promotion because of his age or that he was demoted for any reason other than his admitted violation of Defendant's policies.

As set forth more fully herein and in Defendant CSXT's initial brief in support of its Motion for Summary Judgment (Docket No. 17) [hereinafter "Def. Mem."], nothing in the record or in Hollon's Opposition Brief is sufficient to overcome CSXT's showing that (1) Hollon cannot show direct evidence of age discrimination, (2) Hollon cannot show circumstantial evidence of age discrimination under the McDonnell Douglas burden-shifting framework, and (3) Hollon cannot show that he was subjected to retaliation for alleged protected activity under the ADEA. Accordingly, CSXT is entitled to summary judgment on all of Hollon's claims.

## II.    ARGUMENT AND CITATION OF AUTHORITY

### A.    Hollon's Age Discrimination Claim is Subject to Summary Judgment.

#### 1.    Hollon Fails to Show Direct Evidence of Age Discrimination.

Hollon argues that Workman's alleged "bright future" comments to two younger manager trainees are direct evidence of age discrimination, but this argument is completely without merit.[1]  The

---

[1] Because Hollon discusses this alleged "direct evidence" only in the context of his discriminatory demotion claim (*see* Pl. Opp. At 13-15), Hollon apparently does not contend that Workman's alleged comments are direct evidence of discrimination for purposes of his discriminatory failure to promote claim. But even if Hollon did intend to assert a direct evidence argument for purposes of his failure to
(continued...)

Eleventh Circuit has made clear that direct evidence of discrimination is "evidence which, if believed, would prove the existence of a fact [in issue] *without inference or presumption*." Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990) (internal citations omitted) (emphasis in original). "Only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age . . . constitute direct evidence of discrimination." Id. Moreover, "remarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998). For example, while direct evidence in a discriminatory discharge case would exist where a decisionmaker states, "Fire [plaintiff] – he is too old," a document which merely refers to the ages or birthdates of employees "at most, suggests discrimination" and therefore is not direct evidence. Earley, 907 F.2d at 1081-82.

The alleged comments at issue in this case do not constitute "direct evidence" of age discrimination under this rigorous standard, as they do not suggest age discrimination at all, let alone demonstrate age discrimination "*without inference or presumption*."

First, the comments at issue were not made by a decisionmaker in connection with Hollon's demotion, as Pendergrass – not Workman – made the decision to demote Hollon (Pendergrass Decl. at ¶ 4-6; TPD at 25:4-26:5)[2], the alleged comments were made more than a month before the demotion

---

(...continued)

promote claim, such an argument would be without merit for the same reasons that it is without merit with respect to the demotion claims.

[2] Despite undisputed testimony from Pendergrass that he, rather than Workman, made the decision to demote Hollon, Hollon insists that Workman "was integrally involved in the demotion/termination process" based solely on Workman's alleged comment to Hollon and Dean that he (Workman) was "relieving [them] of [their] Trainmaster position for the falsification of the RCO card." (Pl. Opp. at 13). Hollon's reliance on this alleged statement by Workman is insufficient to demonstrate that Workman, rather than Pendergrass, made the decision to demote Hollon. First, the only "evidence" for this alleged statement is Hollon's own self-serving affidavit. However, as noted in CSXT's

(continued...)

decision was made or announced to Hollon,[3] and the alleged comments neither reference Hollon's demotion nor suggest any intent or desire to demote Hollon in the future.  Such stray remarks, neither related nor proximate in time to the demotion decision at issue here, cannot constitute direct evidence of age discrimination for purposes of Hollon's demotion claim.  See Reynolds v. City of Dallas, No. 3:01-CV-2424-P, 2004 WL 893425 (N.D. Tex. Apr. 30, 2004) (plaintiff could not prove age discrimination by direct evidence where plaintiff alleged that management employee asked him "How old are you?"; comment was stray remark neither related nor proximate in time to promotion decision at issue in case).[4]

Second, even if these alleged comments were somehow related to Hollon's demotion, the comments themselves do not even remotely suggest age bias on the part of Workman.  Even according to Hollon's own testimony, these alleged comments involved nothing more than a remark

_____

(...continued)

Motion to Strike and Disregard Plaintiff's Affidavit, filed contemporaneously with this brief, this allegation is inconsistent with Hollon's deposition, where he testified, quite differently, that Workman said to him that "CSX no longer needed [Hollon's and T.J. Dean's] services as managers due to [their] forging an FRA document," not that he personally "was relieving them" of their trainmaster positions. (Hollon Depo. at 153:9-154:10) (emphasis supplied).  Second, even assuming that Workman did make this alleged statement, nothing about this statement suggests that Workman himself made the demotion decision, rather than merely carried out Pendergrass's decision.

[3] Hollon alleges that Workman's alleged "bright future" comments were made during a meeting in early April, 2006.  (PD at 184:20-188:3.)  Hollon was not demoted until June 19, 2006.  (PD at 149:21-150:9).

[4] See also Mauter v. Hardy Corp., 825 F.2d 1554, 1558 (11th Cir. 1987) (alleged comment by company officer that company "was going to weed out the old ones" did not constitute direct evidence of age discrimination for plaintiff's discriminatory termination claim because company officer who allegedly made comment played no part in decision to terminate plaintiff); Kincaid v. Bd. of Trustees, 188 Fed. Appx. 810, 816 (11th Cir. 2006) (alleged comments made by college president and vice president that college faculty should "look more like the student body, predominantly young and black," did not constitute direct evidence of age and race discrimination for professor's discriminatory termination claim because neither president nor vice president of college were decisionmakers in professor's termination).

that two younger employees "have a bright future with the company"[5] followed by an inquiry about Hollon's age several minutes later during a discussion about the upcoming retirement of two other employees.  (PD at 187:12-17; 195:7-197:4).  Such vague and seemingly innocuous comments do not provide even circumstantial evidence of discrimination, let alone direct evidence.  See Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1329-30 (11th Cir. 1998) (alleged comment by management employee that "older people have more go wrong" did not constitute direct evidence of age discrimination for plaintiff's discriminatory termination claim; employee who allegedly made comment was not involved in decision to terminate plaintiff and comment was too vague to prove even generalized discriminatory animus).[6]

---

[5] Notably, Hollon believes that this alleged comment was made in reference to the two younger employees only because, at the time that he made the alleged comment, Workman was allegedly looking in the direction of the two younger employees.  (PD at 187:12-17, 190:9-13).  Other than Hollon's own testimony, there is no evidence that Workman intended this comment to be directed toward the younger employees or even that Workman made the alleged comment at all.  For his part, Workman does not recall telling the younger employees in particular that they had a "bright future," as he believed that the entire organization in Montgomery had a bright future.  (WD at 52:3-53:7).

[6] Bonham v. Regions Mortgage, Inc., 129 F. Supp. 2d 1315 (M.D. Ala. 2001), on which Hollon relies, does not support Hollon's direct evidence argument, as the court held that the comments at issue in that case (i.e., comments that plaintiff was "getting real old" and might "have to stop stay[ing] up so late and partying at night because of her age") did not constitute direct evidence of age discrimination.  See Bonham, 129 F. Supp. 2d at 1322-23.  The only other case cited by Hollon in support of his direct evidence argument, Fakete v. Aetna, Inc., 308 F.3d 335 (3d Cir. 2002), is inapposite in this case.  Unlike Workman's alleged comments, the comments at issue in Fakete (i.e., a statement by a supervisor that he "was looking for younger, single people" and that, as a consequence, the plaintiff "would not be happy [at the company] in the future") clearly demonstrated age bias and were made during a serious one-on-one conversation about the plaintiff's future at the company by the same supervisor who eventually decided to terminate the plaintiff's employment.  Fakete, 308 F.3d at 339-40).  In contrast (and as noted above), Workman did not make the decision to demote Hollon, his alleged comments were made at a group meeting that was neither related nor proximate in time to the demotion decision at issue in this case, and the alleged comments do not on their face demonstrate age bias.

     **2.**     **Hollon Fails to Demonstrate Age Discrimination Under the <u>McDonnell Douglas</u> Burden-Shifting Framework.**

Because Hollon cannot show direct evidence of discrimination, he must prove his age discrimination claims through the use of circumstantial evidence under the burden-shifting framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). This he cannot do, as both Hollon's failure to promote and discriminatory demotion claims fail under this framework.

     **a.**     **Hollon Cannot Show Discriminatory Failure to Promote.**

     **(1)**     **Hollon Fails to Establish a Prima Facie Case of Discriminatory Failure to Promote.**

As noted in CSXT's Initial Brief (<u>see</u> Def. Brief at 14-16), Hollon fails to establish a prima facie case of age discrimination with respect to the assistant manager of customer operations and Atlanta assistant terminal superintendent positions that he sought because (a) he cannot show that the assistant manager of customer operations position was available or that he was qualified for it and (b) he cannot show that a "substantially younger" person was selected for the Atlanta position. Hollon makes no serious attempt to counter these arguments in his brief. Indeed, nowhere in his brief does Hollon even address the assistant manager of customer operations position and his only "argument" regarding the Atlanta position is a conclusory and demonstrably incorrect assertion that Terrance Walton (the applicant hired for the position) is "several years younger" than him (<u>see</u> Pl. Opp. at 6; Hollon Aff. at ¶ 6,) notwithstanding undisputed record evidence demonstrating that Walton is in fact *less than* two years younger than Hollon.[7]

---

[7] Hollon was born on November 14, 1959, while Walton was born on August 5, 1961. (PD at 21:2-3; Pendergrass Decl. at ¶ 6). As noted in Defendant's Initial Brief, this less- than two-year difference in age between Hollon and Walton does not create an inference of age bias sufficient to create a prima facie case of discrimination under the ADEA. <u>See</u> <u>Pace v. Southern Ry. Sys.</u>, 530 F. Supp. 381, 385 (N.D. Ga. 1981) (plaintiff could not present prima face case of age discrimination where plaintiff was replaced by someone two years his junior; difference in age of "a mere two years" is insufficient to raise inference of age discrimination), aff'd, 701 F.2d 1383 (11th Cir. 1983).

        **(2)**        **Hollon Cannot Demonstrate That CSXT's Legitimate, Non-Discriminatory Reasons for Its Promotion Decisions are a Pretext for Age Discrimination.**

As also noted in Defendant's Initial Brief (Def. Mem. at 17-20), Hollon fails to present any evidence that CSXT's legitimate, nondiscriminatory reasons for its promotion decisions are a pretext for age discrimination.  Here, too, Hollon fails to make any serious challenge to CSXT's arguments.

As an initial matter, the Supreme Court's decision in Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000) does not preclude summary judgment to CSXT on Hollon's demotion claim.  Hollon's argument on this point is confusing to say the least, but Hollon seems to imply that, under Reeves, an employment discrimination plaintiff can always survive summary judgment simply by presenting a prima facie case of discrimination and then disputing the veracity of the defendant's articulated reason for the action or decision at issue in the case.  Reeves stands for no such proposition.

Prior to Reeves, some federal courts applied a so-called "pretext-plus" standard, i.e., they held that, in order to survive summary judgment, an employment discrimination plaintiff must present evidence *both* that the employer's articulated reason was false *and* that the employer's true motive was discriminatory.  See C. Geoffrey Weirich, ed., Employment Discrimination Law at 50-58 (BNA 4th ed. 2007) (attached hereto as Exhibit A).  The Supreme Court in Reeves rejected this "pretext-plus" standard, holding, instead, that "a plaintiff's prima facie case, combined with *sufficient evidence* to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148 (emphasis supplied).[8]  It does not

---

[8] Notably, the Supreme Court did not hold that such a showing will *always* permit a plaintiff to survive summary judgment.  Rather, the Court noted that "there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory" such as a situation where "the plaintiff created only a weak issue of fact as to whether the employer's reason

(continued...)

follow that, under <u>Reeves</u>, Hollon can create a genuine issue of material fact simply by offering

conclusory allegations of discrimination or even by presenting minimal evidence of pretext.  On the

contrary, Hollon must present <u>concrete</u> <u>evidence</u> in the form of <u>specific</u> <u>facts</u> showing that CSXT's

explanation is false.  <u>Earley</u>, 907 F.2d at 1081.  Mere conclusory allegations and assertions will not

suffice.  <u>Id.</u>  As discussed in further detail below, Hollon's "evidence" of pretext fails to meet this

standard.[9]

First, Hollon presents no evidence to dispute CSXT's explanation for not selecting him for the

Pensacola trainmaster position – i.e., that Frank Leyhew, the employee who was in charge of

scheduling interviews for this position, believed that Hollon had not responded to an invitation to

interview for the position.  Rather, Hollon contends only that he was never notified of an interview for

the position.  (Pl. Opp. at 6; Hollon Aff. at ¶ 7.)  Even if this allegation is true and Hollon was never

actually notified that he had been selected to interview for the position, such evidence suggests

nothing more than an innocent mistake on the part of Leyhew or his staff, not pretext for age

discrimination.  See <u>Silvera v. Orange County Sch. Bd.</u>, 244 F.3d 1253, 1261 (11th Cir. 2001) (fact

that employer may have made mistake did not constitute pretext; "[p]retext means more than a

_____

(...continued)

was untrue and there was abundant and uncontroverted independent evidence that no discrimination
had occurred."  <u>Reeves</u>, 530 U.S. at 148.

[9] In addition, contrary to Hollon's assertion that the facts in <u>Reeves</u> are "directly analogous" to the
facts in this case, <u>Reeves</u> is inapposite to this case.  In <u>Reeves</u>, the plaintiff was discharged, allegedly
because of his "shoddy record keeping," which resulted in an overpayment of wages to the employees
under his supervision.  <u>Reeves</u>, 530 U.S. at 143-44.  The plaintiff made a substantial showing that the
employer's explanation for his discharge was false by showing that the records in question were in
fact accurate.  In contrast, it is undisputed that the document at issue in this case (J.R. Weeks' RCO
certification card) was in fact inaccurate, since Hollon admits that, at the time he signed Weeks' RCO
card certifying that an observation had occurred, Weeks had not yet been observed by Dean.  (PD at
108:13-110:13, 121:2-12:19).

mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action")
(internal citation omitted).

Second, Hollon presents no evidence to dispute CSXT's explanation for not selecting him for
the Montgomery terminal manager and Atlanta assistant terminal superintendent positions – i.e.,
Pendergrass' belief that Jason Tipton and Terrance Walton possessed superior qualifications.  Rather,
Hollon merely asserts, in conclusory fashion, that he was "equally or better qualified" than Tipton and
Walton for these positions.  (Pl. Opp. at 5-6; Hollon Aff. at ¶¶ 5-6).  Hollon either misunderstands or
deliberately misrepresents the applicable standard, as it is not enough for Hollon to demonstrate
merely that he was "equally or better qualified" for these positions.  Instead, Hollon must show that
the disparities in his qualifications (as compared to those of Tipton and Walton) were "of such weight
and significance that no reasonable person, in the exercise of impartial judgment, could have chosen
the candidate selected over the plaintiff for the job in question."  Cooper v. Southern Co., 390 F.3d
695, 732 (11th Cir. 2004) (cited with approval in Ash v. Tyson Foods, Inc., 546 U.S. 454, 457
(2006)).  This Hollon cannot do, as even a cursory review of Hollon's relative qualifications
demonstrates the superior qualifications of Tipton and Walton for the positions at issue.[10]

---

[10] As noted in CSXT's Initial Brief (Def. Mem. at 18), Hollon's only prior management experience
was five years as a trainmaster at the Montgomery terminal.  In contrast, Tipton had nine years of
prior management experience, having previously served as an assistant terminal superintendent in
Atlanta, a terminal manager in Mobile, Alabama, a trainmaster in Flomaton, Alabama and Columbus,
Ohio, and an assistant trainmaster in Richmond, Virginia.  (Pendergrass Decl. at ¶ 5, Ex. A.)[10]
Likewise, Walton had ten years of prior management experience, having previously served as the
director of process improvement and managing director of mechanical operations in Jacksonville,
Florida and a plant manager and manager of production in Waycross, Georgia. (Pendergrass Decl. at
¶ 6, Ex. B.)  Moreover, in contrast to Hollon, who has no college degree (PD at 29:7-30:7), both
Tipton and Walton have a bachelor's degree and an MBA.  (Pendergrass Decl. at ¶¶ 5-6.)  Rather than
addressing these qualifications head-on, Hollon merely asserts that that his greater longevity with
CSXT in non-management positions made him more qualified for these positions than Tipton and
Walton.  This argument is without merit as, notwithstanding Hollon's own subjective view that his
experience in non-management positions *should* have been taken into consideration, the record is clear
that CSXT considers an applicant's prior experience in non-management positions only for initial
(continued...)

Third, Hollon cannot show pretext by pointing to other promotions that he was allegedly

denied before and after the promotion decisions at issue in this case.[11]  That Hollon was allegedly

denied a promotion in 1997 (when he was 37 or 38) and again in 2000 (when he was just barely 40), is

hardly evidence of a "pattern or practice" of age discrimination, especially since Hollon admittedly

_____

(...continued)

promotions to a management position, not for subsequent promotions. (See Pendergrass Decl. at ¶ 7).
Hollon may disagree with the criteria that CSXT uses in assessing the qualifications of applicants for
management positions, but he cannot demonstrate pretext merely by second-guessing those business
decisions.  See Gaddis v. Russell Corp., 242 F. Supp. 2d 1123, 1136-37 (M.D. Ala. 2003) (granting
summary judgment to employer on discriminatory failure to promote claim where employee could not
demonstrate that her credentials so far exceeded those of people selected for positions at issue that no
reasonable person, in exercise of impartial judgment, could have chosen selected applicants over her;
plaintiff cannot establish pretext simply by challenging wisdom of defendant's hiring decisions).

[11] In his affidavit, Hollon alleges that he was denied promotions to trainmaster positions in Mobile,
Alabama in 1997 and 2000.  (Hollon Aff. at ¶ 8).  As these promotion decisions are obviously time-
barred, Hollon apparently does not intend to raise these alleged failures to promote as distinct claims.
Indeed, he admits in his brief that these decisions are "not actionable in this case" but are presented as
evidence of an alleged "pattern or practice."  (Pl. Opp. at 6).  Hollon also alleges that, following his
demotion on June 19, 2006, he applied, and was rejected, for a number of management positions, most
of which he could not recall when asked about them at his deposition.  (See Hollon Aff. at ¶ 22; PD at
242:1-17).  Here, too, Hollon apparently intends to raise these subsequent promotion decisions only as
evidence of an alleged "pattern or practice" (rather than as distinct claims of discrimination or
retaliation in his case) as his Complaint references only the promotion decisions in "April and or [sic]
May 2006" (Compl. at ¶ 9) and he argues in his brief only that he has established "a prima facie case
for age discrimination in each hiring scenario, positions 1 – 4" (presumably the Montgomery
trainmaster, assistant manager of customer operations, Atlanta assistant terminal superintendent, and
Pensacola trainmaster positions) (Pl. Opp. at 12).  As noted in CSXT's Initial Brief (Def. Mem. at 17
n.11, 22 n.18), to the extent that Hollon intends to raise these promotion decisions as distinct claims in
this case, these claims are not viable because they were not raised in Hollon's EEOC charge.  (PD at
263:4-13, Ex. 17).  Robinson v. Regions Fin. Corp., 242 F. Supp. 2d 1070, 1079 (M.D. Ala. 2003)
(plaintiff's claims for promotions that she was allegedly denied following her filing of EEOC charge
were not properly before court because, although plaintiff had alleged in EEOC charge that she was
denied other promotions, her post-EEOC charge allegations could not reasonably be expected to grow
out of her initial EEOC charge and, therefore, were not ripe for court's consideration).  As Hollon
makes no attempt to counter this timeliness argument raised in CSXT's Initial Brief, such claims (to
the extent they are intended to be brought as separate claims) should be deemed abandoned.  See
Eiland v. Blagburn, No. 3:05-CV-459-WKW, 2007 WL 2926863, at *13 (M.D. Ala. Oct. 5, 2007)
(Watkins, J.) (plaintiff abandoned claims by failing to brief them; "[a] plaintiff abandons a claim if the
plaintiff fails 'to list an enumerated claim and brief an issue in a memorandum of law in opposition to
defendant's motion for summary judgment.'") (internal citations omitted).

was promoted in 2001 and again in 2002 (PD at 64:1-65:14, 76:14-20) and he fails to provide the names, qualifications, or even ages of the applicants who were allegedly selected for the trainmaster positions in 1997 and 2000.  Likewise, while Hollon asserts that "younger persons" were selected for the positions to which he applied following his demotion and that "he was well or better qualified for all positions than the younger persons who got the promotions" (Pl. Opp. at 6), he fails to identify the names, qualifications, or ages of the applicants allegedly selected for those positions, fails to identity the management employees who made those promotion decisions, and fails to indicate whether any of the other applicants had (like him) been demoted recently for violations of CSXT's policies.  As such, there is not even an iota of evidence to find that Hollon's age was a factor in these promotion decisions or that these other promotion decisions somehow demonstrate a "pattern or practice" of age discrimination.

### b.        Hollon Cannot Show Discriminatory Demotion.

As also noted in CSXT's initial brief (Def. Mem. at 20-21), Hollon's demotion claim fails because, even assuming that Hollon can demonstrate a prima facie case of discriminatory demotion, he fails to present any evidence that CSXT's legitimate, non-discriminatory reason for his demotion (i.e., his admitted violation of the Company's ethics policies) is a pretext for discrimination.  Having admitted that he signed another employee's name on an RCO certification card required by the FRA, Hollon does not, and cannot, argue that he did not commit the infraction for which he was demoted.  Instead, Hollon argues (1) that he should not have been demoted because he "did nothing for his own gain" and "never intentionally did anything false or fraudulent," and (2) that other unnamed and unidentified employees have forged or falsified documents at CSXT's Montgomery terminal and have not been disciplined.  As discussed in greater detail below, neither of these arguments is sufficient for Hollon to withstand summary judgment on his discriminatory demotion claim.

(1)    **Hollon's "No Harm/No Foul" Argument Does Not Show Pretext.**

Far from presenting evidence that CSXT's articulated reason for his demotion is false, Hollon merely makes excuses for his violation of CSXT's ethics policies, arguing in essence that he didn't *intend* to do anything wrong and that, because CSXT was not fined by the FRA, he should not have been demoted. (Pl. Opp. at 12). This "no harm/no foul" argument amounts to nothing more than quibbling with CSXT's business judgment and does not constitute evidence of pretext. See Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991) ("Federal courts do not sit as a super-personnel department that re-examines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the ADEA does not interfere. Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior.") (internal citations omitted); Rojas v. Florida, 285 F.3d 1339, 1342 (11th Cir. 2002) ("We are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.") (internal citations omitted).[12]

(2)    **Hollon's Alleged Comparator Evidence Does Not Show Pretext.**

Hollon also cannot point to evidence that similarly-situated employees committed similar violations of CSXT's ethics policies but were not demoted or otherwise disciplined. Hollon alleges in his affidavit that he and other employees were instructed to log in trains as having arrived in Montgomery when, in fact, the trains were actually at other terminals, and that he and other

---

[12] See also Kalkhorst v. UPS, Inc., 375 F. Supp. 2d 1079, 1082-83 (D. Colo. 2005) (granting summary judgment to employer on discriminatory discharge claim brought by employee who was fired after failing to report accident to company management; employee could not demonstrate pretext by advancing "no harm/no foul" theory that, because he reported accident to customer, accident was actually "reported").

employees were also instructed to change the departure and arrival times of CSXT trains.  (Hollon Aff. at ¶ 17).  Relying solely on this representation in his own self-serving affidavit, Hollon argues that "Workman and other CSX managers over Hollon had a history or pattern or practice of directing subordinates, including Plaintiff Hollon, to falsify, forge or create fraudulent documents at CSX's Montgomery facility and there was never any action taken against CSX employees or management for this practice."  (Pl. Opp. at 12).  This argument cannot stand.

First, Hollon's allegations in his affidavit about these alleged practices should not even be considered by the Court, as they contradict Hollon's prior deposition testimony.  When specifically asked in his deposition whether he knew or had heard of any situations where CSXT employees have falsified documents, Hollon made no reference to such alleged "falsifying" of train arrival and departure times.  Rather, he replied only that he had heard that one employee named Ken Williams had on one occasion signed another employee's name on an FRA certification card.  (Hollon Depo. at 293:17-294:13).[13]  Having previously testified fully on this issue in his deposition, Hollon cannot survive summary judgment by relying on these new allegations that he did not disclose in his deposition.  See Thomas v. Ala. Council on Human Relations, 248 F. Supp. 2d 1105, 1112-14 (M.D. Ala. 2003) (striking portions of plaintiff's affidavit that conflicted with prior deposition testimony and granting summary judgment to defendant).

Second, even if this "evidence" is properly considered by the Court, such "evidence" is not sufficient to demonstrate pretext.  In order to demonstrate pretext through use of alleged comparator evidence, "the comparator's misconduct must be *nearly identical* to the plaintiff's in order 'to prevent

---

[13] As noted in CSXT's Initial Brief, Hollon admits that he does not know whether Williams is remote control certified, does not know the name of the engineer whose certification card Williams allegedly signed, and does not know if this alleged incident was ever reported to management.  (PD at 115:20-118:18, 293:17-294:13).  Moreover, Hollon admits that he bases this allegation solely on hearsay.  (PD at 116:8-12.)

courts from second-guessing employers' reasonable decisions and confusing apples with oranges.'"

Silvera v. Orange County Sch. Bd., 244 F.3d 1253, 1259 (11th Cir. 2001) (emphasis supplied)

(internal citation omitted).  See also Williams v. Russell Corp., 218 F. Supp. 2d 1283, 1297-98 (M.D.

Ala. 2002) (plaintiff could not demonstrate pretext by pointing to other employees who engaged in

misconduct but were not disciplined because, while other employees had engaged in some

misconduct, their conduct was not "nearly identical" to the conduct for which plaintiff was

disciplined).  Here, Hollon fails to explain any of the circumstances surrounding the alleged

"falsifying" of train arrival and departure times, fails to identify the names and ages of the other

employees who allegedly engaged in such "falsification," and fails to present evidence that

Pendergrass was aware that such conduct had allegedly occurred.[14]  In short, Hollon fails to present

any evidence from which this Court could determine that these unidentified comparators had engaged

in "nearly identical" misconduct but were not demoted.  See Byer v. DTG Operations, Inc., No. 07-

80033-CIV, 2007 WL 2746619, at *9-*10 (S.D. Fla. Sept. 18, 2007) (ADEA plaintiff who was fired

for sleeping on the job could not demonstrate pretext by alleging that another employee had slept on

the job but was not fired; record was devoid of evidence that would allow court to determine that other

employee was similarly situated because plaintiff did not provide any evidence regarding position

held by the other employee, how many witnesses saw him sleeping, whether there was an inquiry into

incident, or whether he was within same protected class as plaintiff).

**B.    Hollon's Retaliation Claim is Subject to Summary Judgment.**

Hollon's retaliation claim is also subject to summary judgment.

---

[14] Notably, while Hollon alleges that Workman and other management employees instructed him to "falsify, forge or create fraudulent documents," Hollon cites no testimony from Workman or anyone else to corroborate this allegation.  Indeed, although Hollon's counsel deposed both Workman and Pendergrass, he failed to inquire about this allegation in their depositions.

**1.    Hollon Did Not Engage in Any Protected Activity Prior to His Demotion.**

As noted in CSXT's Initial Brief, Hollon admits that he did not file his EEOC charge until the day <u>after</u> he was informed of his demotion.  (PD at 158:3-6.)  Therefore, Hollon cannot rely on his EEOC charge as the basis for his retaliation claim in this case.  Instead, in his brief Hollon alleges that he engaged in an "ongoing" course of protected activity through two e-mails that he sent to Workman and Bob Frulla on May 27, 2006 and through informal conversations that he allegedly had with his co-workers regarding CSXT's promotion practices.  (Pl. Opp. at 15-16; Hollon Aff. at ¶ 18).

This argument is absurd, as none of Hollon's e-mails or alleged conversations can even remotely be considered "opposition" to an unlawful practice sufficient to state a prima facie case of retaliation under the ADEA.    As noted in CSXT's Initial Brief (Def. Mem. at 23), nowhere in his e-mails did Hollon even mention his "age," let alone complain that he believed he was passed over for promotional opportunities because of his age or that he was otherwise subjected to age discrimination. As also noted in CSXT's Initial Brief (Def. Mem. at 23-24),  although Hollon alleges that he spoke with Melvin Murray and Jerry Hozeworth about "the age discrimination issue," (PD at 257:9-258:21), neither Murray nor Hozeworth are or were Hollon's supervisors, nor does Hollon know whether Murray or Hozeworth told anyone about the conversations with Hollon.  (PD at 258:22-259:7.)  Thus, neither these e-mails nor these conversations constitute protected activity under the ADEA. <u>Smith v. Wynfield Dev. Co.</u>, 451 F. Supp. 2d 1327, 1349 (N.D. Ga. 2006) (employee did not engage in protected activity under ADEA where, although she complained to employer, she did not actually complain about age discrimination); <u>Fox v. Eagle Distrib. Co.</u>, No. 3:05-cv-476, 2006 WL 2927441, at *8 (E.D. Tenn. Oct. 11, 2006) (while complaints about age discrimination to management are

protected activity, "complaints about the company to co-workers and customers are not").[15]  Although CSXT raised this argument in its initial brief, Hollon makes no attempt to address it.[16]

        **2.**    **Hollon Cannot Demonstrate That CSXT's Legitimate, Non-Retaliatory Reason For His Demotion Was A Pretext For Retaliation.**

Finally, and also as noted in CSXT's Initial Brief (Initial Brief at 25), for the same reasons that Hollon cannot establish that CSXT's legitimate, non-discriminatory reason for his demotion was a pretext for discrimination, he cannot demonstrate that it was a pretext for retaliation.

**III.**    **CONCLUSION**

For the reasons stated above and in CSXT's Initial Brief in support of its Motion for Summary Judgment, CSXT is entitled to summary judgment on all of Hollon's claims.

This 22nd day of January, 2008.

*[signature on next page]*

---

[15] Hollon also alleges that on one occasion he spoke with Ken Dziwulski, CSXT's director of train operations in Jacksonville, following his non-promotion to the Montgomery terminal manager position.  (PD at 177:9-21, 253:14-254:19.)  Hollon alleges that Dziwulski told him that "a lot of these positions [are] very political."  (PD at 253:14-154:19.)  Hollon responded that "[he] was not a political person."  (PD at 253:14-254:19.)  Hollon understood Dziwulski's comment as referring to "who [is] friends with whom" and "who was trying to impress whom."  (PD at 256:1-9.)  In addition, Hollon alleges that, shortly *after* his demotion, he spoke with Angie Averitt, then-terminal manager in Montgomery, and that she told him that she had spoken to a manager named Scott Conner about Hollon's background and work ethic and that Conner had informed her that he wanted to interview Hollon for a position in Birmingham but that "labor relations would not let him or allow him."  (PD at 250:16-251:7.)  As neither of these conversations even referenced "age," let alone age discrimination, Hollon cannot demonstrate that the conversations constitute protected activity under the ADEA.  Moreover, because Hollon's alleged conversation with Averitt occurred after his demotion, this conversation obviously cannot be the basis for his retaliatory demotion claim.

[16] In CSXT's Initial Brief (Initial Brief at 25-26), CSXT also noted that, even if these e-mails and alleged conversations could be considered protected activity under the ADEA, Hollon cannot demonstrate that there is a causal connection between his demotion and any such protected activity, as he fails to presents any evidence that Pendergrass was aware of his e-mails to Workman and Frulla or that he was aware of Hollon's alleged conversations with his co-workers.  Again, Hollon completely ignores this argument in his opposition brief.

Respectfully submitted,


PAUL, HASTINGS, JANOFSKY
  & WALKER, LLP
600 Peachtree Street, N.E.
Suite 2400
Atlanta, Georgia 30308
Telephone: (404) 815-2400
Facsimile: (404) 815-2424

    */s/  William C. Barker*
Weyman T. Johnson, Jr.
Ga. Bar. No. 395775
William C. Barker
Ala. Bar. No. 3411-R-71W

Attorneys for Defendant
CSX Transportation, Inc.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **Ronald A. Hollon, Sr.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 2:06-CV-1099-WKW-CSC** |
| | ) | |
| **CSX Transportation, Inc.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2008 I electronically filed the foregoing **REPLY IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the EM/ECF system, which will automatically send e-mail notification of such filing to the following attorney of record. I also certify that I served a copy via U.S. mail:

Gary E. Atchison, Esq.
P.O. Box 2002
492 S. Court St.
Montgomery, AL 36102
Telephone: (334) 262-7232


        */s/ William C. Barker*
        Attorney for Defendant
        CSX Transportation, Inc.

Several courts of appeals held that once the plaintiff has established a prima facie case, introducing credible evidence of pretext is sufficient to defeat an employer's motion for summary judgment or post-trial motion for judgment as a matter of law.[171] Others held that *Hicks* requires plaintiffs to offer substantial evidence *both* that the employer's articulated reason was false *and* that the employer's true reason was discriminatory—i.e., a "pretext-plus" standard.[172] The Supreme Court resolved this dispute in *Reeves v.*

---

is insufficient for the jury simply to disbelieve the employer; the *Hicks* standard was not satisfied); Holder v. City of Raleigh, 867 F.2d 823, 827–28, 49 FEP 47 (4th Cir. 1989) (pretextual decisions are not unlawful unless the decisions are a pretext for discrimination); Hallquist v. Plumbers & Pipe Fitters Local 276, 843 F.2d 18, 24, 47 FEP 323 (1st Cir. 1988) (the plaintiff has the burden of showing discrimination, not merely that the proffered reason was fabricated); Benzies v. Illinois Dep't of Mental Health & Dev. Disabilities, 810 F.2d 146, 148, 42 FEP 1537 (7th Cir. 1987) (the judge may conclude that neither discriminatory intent nor the employer's explanation accounts for the decision).

[171]*See, e.g.*, Johnson v. Zema Sys. Corp., 170 F.3d 734, 744, 79 FEP 584 (7th Cir. 1999) (summary judgment for defendant reversed where plaintiff submitted sufficient evidence to create genuine issue of material fact on pretextual nature of defendant's alleged reasons for discharge); McGarry v. Board of County Comm'rs, 175 F.3d 1193, 79 FEP 964 (10th Cir. 1999) (summary judgment for defendant reversed where plaintiff presented evidence of factual dispute as to genuineness of defendant's proffered reason for not hiring plaintiff); EEOC v. Yenkin-Majestic Paint Corp., 112 F.3d 831, 835, 73 FEP 1317 (6th Cir. 1997) (prima facie case and proof that employer's proffered reasons not actual reasons for discharge sufficient to support inference of intentional discrimination; no additional proof of discriminatory animus required); Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 72 FEP 518 (3d Cir. 1996) (en banc) (once plaintiff offers sufficient evidence of pretext, court may not pretermit jury's ability to draw inference of discrimination from that evidence); Warren v. City of Carlsbad, 58 F.3d 439, 443, 75 FEP 3 (9th Cir. 1995) (plaintiff's burden at summary judgment stage is to produce facts that either directly show discriminatory motive or show that city's explanation for denial of promotion not credible).

[172]*See, e.g.*, Alvarez-Fonseca v. Pepsi Cola of P.R. Bottling Co., 152 F.3d 17, 25 (1st Cir. 1998) (even assuming plaintiff created genuine issue of material fact regarding pretext, defendant was entitled to judgment as matter of law because plaintiff did not further prove that defendant discharged him because of his age); Vaughan v. Metrahealth Cos., 145 F.3d 197, 202, 77 FEP 734 (4th Cir. 1998) (even where plaintiff disproves employer's explanation for job action, plaintiff must come forward with sufficient evidence of illegal discrimination before her case can go to the jury); McCullough v. Real Foods, Inc., 140 F.3d 1123, 1128, 76 FEP 720 (8th Cir. 1998) (noting that plaintiff must establish both that reason given by employer was false and that discrimination was real reason); Travis v. Board of Regents, 122 F.3d 259, 264, 74 FEP 1656 (5th Cir. 1997) (although jury could have reasonably concluded that plaintiff established prima facie case and pretext, jury verdict for plaintiff must be reversed because plaintiff offered insufficient evidence that gender motivated



EXHIBIT

**A**

*Sanderson Plumbing Products, Inc.*[173] The Court rejected the pre-text-plus approach, and held that a "plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."[174]

In *Reeves*, a jury had awarded a $35,000 verdict (doubled to $70,000 on a finding of willfulness) to Roger Reeves, age 57, whose employer fired him in violation of the ADEA after 40 years of service. The employer claimed it fired Reeves because he kept inaccurate time records. Reeves testified not only that the employer was wrong about the record keeping, but that his much-younger supervisor made crude, childish remarks about Reeves' age—the most colorful of which was that plaintiff "was so old that [he] must have come over on the Mayflower."[175] On appeal, the Fifth Circuit reversed denial of judgment as a matter of law under Federal Rule of Civil Procedure 50(b), concluding that Reeves had failed to present enough evidence to prove that age, rather than performance, motivated his discharge. The Supreme Court reversed the Fifth Circuit's holding that the ADEA defendant was entitled to the entry of judgment as a matter of law.

There were two principal components of the Supreme Court's decision. The first was a direct challenge to circuits that explicitly, or by implication, required plaintiffs to present evidence in addition to proof of pretext to support a finding of discrimination. The Court confirmed that (as in Mr. Reeves' case) a jury could rely solely on evidence of pretext to infer discrimination. Summarizing the evidence presented at trial, the Court held that the employer met its burden of production:

---

defendant's decision). *See generally* Victoria A. Cundiff & Ann E. Chaitovitz, *St. Mary's Honor Center v. Hicks: Lots of Sound and Fury, But What Does It Signify?* 19 EMPLOYEE REL. L.J. No. 3, at 147 (Winter 1993–94) (characterizing *Hicks* as adopting a pretext-plus approach). The dissenting opinion in *Hicks* seemed to anticipate this result. 509 U.S. at 535 (Souter, J., dissenting) ("[The majority's] 'pretext-plus' approach would turn *Burdine* on its head . . . and it would result in summary judgment for the employer in the many cases where the plaintiff has no evidence beyond that required to prove a prima facie case and to show that the employer's articulated reasons are unworthy of credence.").

[173]530 U.S. 133, 82 FEP 1748 (2000).
[174]*Id.* at 148.
[175]*Id.* at 151.

In this case, the evidence supporting respondent's explanation for petitioner's discharge consisted primarily of testimony by Chesnut and Sanderson and documentation of petitioner's alleged "shoddy record keeping." . . . Chesnut testified that a 1993 audit of Hinge Room operations revealed "a very lax assembly line" where employees were not adhering to general work rules. . . . As a result of that audit, petitioner was placed on 90 days' probation for unsatisfactory performance. . . . In 1995, Chesnut ordered another investigation of the Hinge Room, which, according to his testimony, revealed that petitioner was not correctly recording the absences and hours of employees. . . . Respondent introduced summaries of that investigation documenting several attendance violations by 12 employees under petitioner's supervision, and noting that each should have been disciplined in some manner. . . . Chesnut testified that this failure to discipline absent and late employees is "extremely important when you are dealing with a union" because uneven enforcement across departments would keep the company "in grievance and arbitration cases, which are costly, all the time." . . . He and Sanderson also stated that petitioner's errors, by failing to adjust for hours not worked, cost the company overpaid wages. . . . Sanderson testified that she accepted the recommendation to discharge petitioner because he had "intentionally falsif[ied] company pay records."[176]

The Court then held that the plaintiff adequately rebutted this explanation:

Petitioner, however, made a substantial showing that respondent's explanation was false. First, petitioner offered evidence that he had properly maintained the attendance records. Most of the timekeeping errors cited by respondent involved employees who were not marked late but who were recorded as having arrived at the plant at 7 a.m. for the 7 a.m. shift. . . . Respondent contended that employees arriving at 7 a.m. could not have been at their workstations by 7 a.m., and therefore must have been late. . . . But both petitioner and Oswalt [another department supervisor] testified that the company's automated timeclock often failed to scan employees' timecards, so that the timesheets would not record any time of arrival. . . . On these occasions, petitioner and Oswalt would visually check the workstations and record whether the employees were present at the start of the shift. . . . They stated that if an employee arrived promptly but the timesheet contained no time of arrival, they would reconcile the two by marking "7 a.m." as the employee's arrival time, even if the employee actually arrived at the plant earlier. . . . On cross-examination, Chesnut acknowledged that the timeclock sometimes malfunctioned, and that if "people

---

[176]*Id.* at 144 (internal citations omitted).

were there at their work station[s]" at the start of the shift, the supervisor "would write in seven o'clock." . . . Petitioner also testified that when employees arrived before or stayed after their shifts, he would assign them additional work so they would not be overpaid. . . .

Petitioner similarly cast doubt on whether he was responsible for any failure to discipline late and absent employees. Petitioner testified that his job only included reviewing the daily and weekly attendance reports, and that disciplinary write-ups were based on the monthly reports, which were reviewed by Caldwell. . . . Sanderson admitted that Caldwell, and not petitioner, was responsible for citing employees for violations of the company's attendance policy. . . . Further, Chesnut conceded that there had never been a union grievance or employee complaint arising from petitioner's record keeping, and that the company had never calculated the amount of overpayments allegedly attributable to petitioner's errors. . . . Petitioner also testified that, on the day he was fired, Chesnut said that his discharge was due to his failure to report as absent an employee, Gina Mae Coley, on two days in September 1995. . . . But petitioner explained that he had spent those days in the hospital, and that Caldwell was therefore responsible for any overpayment of Coley. . . . Finally, petitioner stated that on previous occasions that employees were paid for hours they had not worked, the company had simply adjusted those employees' next paychecks to correct the errors. . . .[177]

The Court recognized that the Fifth Circuit had concluded that the plaintiff "very well may be correct" that a reasonable jury could have found the defendant's explanation to be pretextual, but had held that this was not enough to sustain the jury verdict for the plaintiff.[178] "And in making this determination, the court of appeals ignored the evidence supporting petitioner's prima facie case and challenging respondent's explanation for its decision."[179]

The Court continued:

The court confined its review of evidence favoring petitioner to that evidence showing that Chesnut had directed derogatory, age-based comments at petitioner, and that Chesnut had singled out petitioner for harsher treatment than younger employees. . . . It is therefore apparent that the court believed that only this additional evidence of discrimination was relevant to whether the jury's verdict should stand. That is, the Court of Appeals proceeded from

[177]Id. at 144–45 (internal citations omitted).
[178]Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146, 82 FEP 1748 (2000).
[179]Id.

the assumption that a prima facie case of discrimination, combined with sufficient evidence for the trier of fact to disbelieve the defendant's legitimate, nondiscriminatory reason for its decision, is insufficient as a matter of law to sustain a jury's finding of intentional discrimination.[180]

Rejecting this view, the Court explained the proper standard:

> In so reasoning, the Court of Appeals misconceived the evidentiary burden borne by plaintiffs who attempt to prove intentional discrimination through indirect evidence. This much is evident from our decision in *St. Mary's Honor Center*. There we held that the factfinder's rejection of the employer's legitimate, nondiscriminatory reason for its action does not *compel* judgment for the plaintiff.... The ultimate question is whether the employer intentionally discriminated, and proof that "the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason ... is correct." ... In other words, "[I]t is not enough to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination."...
>
> In reaching this conclusion, however, we reasoned that it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation. Specifically, we stated:
>
>> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination....
>
> Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive.... In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as "affirmative evidence of guilt." ... Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision.... Thus, a plaintiff's prima facie case, combined with sufficient evidence to find

---

[180] *Id.*

Case 2:06-cv-01099-WKW-CSC    Document 26-2    Filed 01/22/2008    Page 6 of 9

CH. 2.II.C.1                      DISPARATE TREATMENT                        33

that the employer's asserted justification is false, may permit the trier
of fact to conclude that the employer unlawfully discriminated.

This is not to say that such a showing by the plaintiff will *always*
be adequate to sustain a jury's finding of liability. Certainly there
will be instances where, although the plaintiff has established a prima
facie case and set forth sufficient evidence to reject the defendant's
explanation, no rational factfinder could conclude that the action was
discriminatory. For instance, an employer would be entitled to judg-
ment as a matter of law if the record conclusively revealed some other,
nondiscriminatory reason for the employer's decision, or if the plain-
tiff created only a weak issue of fact as to whether the employer's
reason was untrue and there was abundant and uncontroverted inde-
pendent evidence that no discrimination had occurred. . . . To hold
otherwise would be effectively to insulate an entire category of
employment discrimination cases from review under Rule 50, and
we have reiterated that trial courts should not "treat discrimination
differently from other ultimate questions of fact." . . .

Whether judgment as a matter of law is appropriate in any
particular case will depend on a number of factors. Those include
the strength of the plaintiff's prima facie case, the probative value
of the proof that the employer's explanation is false, and any other
evidence that supports the employer's case and that properly may
be considered on a motion for judgment as a matter of law. . . .
For purposes of this case, we need not—and could not—resolve
all of the circumstances in which such factors would entitle an
employer to judgment as a matter of law. It suffices to say that,
because a prima facie case and sufficient evidence to reject the
employer's explanation may permit a finding of liability, the Court
of Appeals erred in proceeding from the premise that a plaintiff
must always introduce additional, independent evidence of discrimi-
nation.[181]

The second component of the opinion addressed the portions
of the record a reviewing court should consider upon appeal of a
denial of a Rule 50(b) motion. The Court stated in pertinent part:

The remaining question is whether, despite the Court of Ap-
peals' misconception of petitioner's evidentiary burden, respondent
was nonetheless entitled to judgment as a matter of law. Under
Rule 50, a court should render judgment as a matter of law when
"a party has been fully heard on an issue and there is no legally
sufficient evidentiary basis for a reasonable jury to find for that
party on that issue." . . . The Courts of Appeals have articulated
differing formulations as to what evidence a court is to consider in
ruling on a Rule 50 motion. . . . Some decisions have stated that

---

[181]*Id.* at 146–49 (internal citations omitted; emphasis in original).

Case 2:06-cv-01099-WKW-CSC    Document 26-2    Filed 01/22/2008    Page 7 of 9

review is limited to that evidence favorable to the non-moving party
. . . while most have held that review extends to the entire record,
drawing all reasonable inferences in favor of the nonmovant. . . .

On closer examination, this conflict seems more semantic than
real. Those decisions holding that review under Rule 50 should be
limited to evidence favorable to the nonmovant appear to have their
genesis in *Wilkerson v. McCarthy*. . . . In *Wilkerson*, we stated that
"in passing upon whether there is sufficient evidence to submit an
issue to the jury we need look only to the evidence and reasonable
inferences which tend to support the case of" the nonmoving
party. . . . But subsequent decisions have clarified that this passage
was referring to the evidence to which the trial court should *give
credence*, not the evidence that the court should *review*. In the
analogous context of summary judgment under Rule 56, we have
stated that the court must review the record "taken as a whole."
. . . And the standard for granting summary judgment "mirrors"
the standard for judgment as a matter of law, such that "the in-
quiry under each is the same." . . . It therefore follows that, in en-
tertaining a motion for judgment as a matter of law, the court should
review all of the evidence in the record.

> In doing so, however, the court must draw all reasonable
> inferences in favor of the nonmoving party, and it may not
> make credibility determinations or weigh the evidence. . . .
> "Credibility determinations, the weighing of the evidence, and
> the drawing of legitimate inferences from the facts are jury
> functions, not those of a judge." . . . Thus, although the court
> should review the record as a whole, it must disregard all
> evidence favorable to the moving party that the jury is not
> required to believe. . . . That is, the court should give credence
> to the evidence favoring the nonmovant as well as that "evi-
> dence supporting the moving party that is uncontradicted and
> unimpeached, at least to the extent that that evidence comes
> from disinterested witnesses."[182]

After discussing in detail the salient facts in the case, the Court
held that the Fifth Circuit had failed to meet this standard because
it "disregarded critical evidence favorable to petitioner—namely,
the evidence supporting petitioner's prima facie case and under-
mining respondent's nondiscriminatory explanation. . . . The court
also failed to draw all reasonable inferences in favor of petitioner."
Ultimately, the court of appeals impermissibly substituted its judg-
ment concerning the weight of the evidence for the jury's.[183]

---

[182]*Id.* at 149–51 (internal citations omitted; emphasis in original).
[183]*Id.* at 152–53 (internal citations omitted).

Although the *Reeves* case involved review of a motion for judgment as a matter of law, the Court reiterated that the standard for Rule 56 summary judgment "mirrors" that of Rule 50, so the holding and analysis in *Reeves* would appear to be equally applicable to summary judgment motions.[184]

Courts applying *Reeves* have continued to recognize that a trier of fact is not compelled to find for the plaintiff merely because the plaintiff has discredited the employer's proffered legitimate, nondiscriminatory reason.[185] Instead, a finding for the plaintiff is permitted only where a fact finder, considering all of the evidence in the record, could reasonably infer that unlawful discrimination occurred.[186] If the evidence in support of the plaintiff's prima facie case or of his or her showing of pretext is sufficiently strong, this evidence alone may be sufficient to permit such an inference.[187]

---

[184]Evans v. City of Bishop, 238 F.3d 586, 592, 84 FEP 1399 (5th Cir. 2000) (describing *Reeves* standard as summary judgment standard); Fisher v. Pharmacia & Upjohn, 225 F.3d 915, 923 n.5, 83 FEP 1445 (8th Cir. 2000) (reiterating *Reeves* standard applicable in summary judgment case). *See generally* Chapter 28 (Title VII Litigation Procedure).

[185]*See* Millbrook v. IBP, Inc., 280 F.3d 1169, 1183 (7th Cir. 2002) ("the existence of a prima facie case, coupled with evidence of pretext, is not always enough to satisfy the plaintiff's burden of proving intentional discrimination"); Zapata-Matos v. Reckett & Colman, Inc., 277 F.3d 40, 45, 87 FEP 1409 (1st Cir. 2002) ("even if the trier of fact disbelieves the nondiscriminatory explanation given by the employer, the trier is not compelled to find that the real reason was discrimination"); EEOC v. Sears Roebuck & Co., 243 F.3d 846, 852, 85 FEP 525 (4th Cir. 2001) ("evidence of pretext, combined with the plaintiff's prima facie case, does not *compel* judgment for the plaintiff") (emphasis in original); Dammen v. Unimed Med. Ctr., 236 F.3d 978, 980–81, 84 FEP 1417 (8th Cir. 2001) ("a showing by the plaintiff that the employer's reason for its decision was a pretext for discrimination will not necessarily insulate the plaintiff from summary judgment"); Sonnier v. Computer Programs & Sys., Inc., 168 F. Supp. 2d 1322, 1331 (S.D. Ala. 2001) ("*Reeves* does not stand for the proposition that any evidence of falsity, regarding the reason for termination, combined with a prima facie case, is sufficient to withstand summary judgment."); Richards v. Farner-Bocken Co., 145 F. Supp. 2d 978, 993, 86 FEP 515 (N.D. Iowa 2001) (no "bright line" rule exists requiring that the plaintiff must prevail if both a prima facie case and pretext are established).

[186]*See* James v. New York Racing Ass'n, 233 F.3d 149, 84 FEP 761 (2d Cir. 2000) ("the way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove—particularly discrimination").

[187]*See, e.g.*, Smith v. Allen Health Sys., Inc., 302 F.3d 827, 833 (8th Cir. 2002) ("It is possible for strong evidence of a prima facie case to establish pretext as well.") (internal citations omitted); Zapata-Matos, 277 F.3d at 45 ("disbelief of the reason may, along with the prima facie case, on appropriate facts, permit the trier of fact to conclude that the employer had discriminated"); Abramson v. William Paterson

Whether sufficient evidence exists to permit a finding of unlawful discrimination is examined on a case-by-case basis.[188]

*Reeves* does not relieve the plaintiff of the burden of establishing a prima facie case or of demonstrating pretext.[189] However, once a plaintiff meets this burden, is the plaintiff presumptively entitled to a jury resolution of his or her claim? The Fourth and Fifth Circuits have each held that the plaintiff proving both a prima facie case and pretext is *presumed* to be entitled to a jury trial unless there is evidence in the record that would necessarily preclude a finding of discrimination.[190] The Second Circuit, however,

Coll. of N.J., 260 F.3d 265, 283 (3d Cir. 2001) (plaintiff "need not present affirmative evidence of discrimination beyond her prima facie showing if a rational factfinder could conclude from the evidence of pretext that WPC's actions were discriminatory"); Zimmermann v. Associates First Capital Corp., 251 F.3d 376, 381, 85 FEP 1505 (2d Cir. 2001) ("Reeves instructed that the combination of evidence establishing a prima facie case and evidence showing that a proffered explanation was pretextual is neither always to be deemed sufficient . . . nor always to be deemed insufficient."); Russell v. McKinney Hosp. Venture, 235 F.3d 219, 223 (5th Cir. 2000) ("a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employee [sic] unlawfully discriminated").

[188]See Zapata-Matos, 277 F.3d at 45 ("everything depends on the individual facts"); Elliott v. British Tourist Auth., 172 F. Supp. 2d 395, 402, 85 FEP 1386 (S.D.N.Y. 2001) (inquiry pursuant to Reeves is "necessarily a case-specific one"), clarified, 86 FEP 1093 (S.D.N.Y. 2001).

[189]See Price v. Federal Express Corp., 283 F.3d 715, 721 n.4, 88 FEP 619 (5th Cir. 2002) ("Reeves does not relieve a plaintiff of his burden to present evidence that will permit a rational factfinder to infer international discrimination."); Guyton v. Ottawa Truck Div., Kalmar Indus. U.S.A., Inc., 15 Fed. Appx. 571, 576–77 (10th Cir. 2001) (purpose of Supreme Court's holding in Reeves was not to eviscerate the pretext requirement, but rather to reject prior line of cases "requir[ing] an employee to introduce sufficient evidence to find both that the employer's reasons are false and that the real reason is discrimination"); Doebele v. Sprint Corp., 168 F. Supp. 2d 1247, 1263 (D. Kan. 2001) ("Reeves does not eliminate plaintiff's obligation to establish her prima facie case and provide sufficient evidence to disbelieve defendants' legitimate, nondiscriminatory explanations for firing her.").

[190]See Blow v. City of San Antonio, 236 F.3d 293, 298 (5th Cir. 2001) (plaintiff entitled to jury resolution unless "unusual circumstances" exist "that would prevent a rational fact-finder from concluding that the employer's reasons for failing to promote her were discriminatory and in violation of Title VII"); Evans v. City of Bishop, 238 F.3d 586, 592 (5th Cir. 2000) ("evidence of the prima facie case plus pretext may, and usually does, establish sufficient evidence for a jury to find discrimination"); Sears Roebuck & Co., 243 F.3d at 854 (once prima facie case and pretext are established, summary judgment must be denied unless employer had produced evidence such that "no rational factfinder" could infer discrimination); Rowe v. Marley Co., 233 F.3d 825, 830, 84 FEP 843 (4th Cir. 2000) (plaintiff who proves both prima