IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RONALD A. HOLLON, SR.,            )
                                 )
        Plaintiff,               )
                                 )
v.                               )      CASE NO. 2:06-cv-1099-WKW
                                 )      [wo]
CSX TRANSPORTATION, INC.,        )
                                 )
        Defendant.               )

## MEMORANDUM OPINION AND ORDER

This case is before the court on the Motion for Summary Judgment (Doc. # 17) and
the Motion to Strike (Doc. # 27) filed by Defendant CSX Transportation, Inc. ("CSX").  For
the reasons set forth below, the Motion for Summary Judgment is due to be GRANTED, and
the Motion to Strike is due to be DENIED.

## I.  FACTS AND PROCEDURAL HISTORY

CSX is a railroad company.  Plaintiff Ronald A. Hollon, Sr. ("Hollon") is a forty-
eight-year-old man who has been employed by CSX for over twenty-five years.  One of
CSX's predecessors hired Hollon in 1981, and in 2001 he was promoted to a management
position.  In 2002, he was promoted again to Terminal Trainmaster in Montgomery, a
position he held until June 2006.

### A.    *Hollon Applies for Four Positions with CSX*

In the spring of 2006, Hollon applied for four positions within CSX and was not
selected for any of them.  He applied for the Assistant Manager of Customer Operations

position in Jacksonville, Florida, on March 10, 2006, after seeing the position listed on the company's intranet.  When Hollon applied for the position, it was already filled.  (Callahan Decl. ¶ 4.)

The second position Hollon applied for was the Montgomery Terminal Manager position, which became open in March 2006.  The qualifications included "[p]rior supervisory/ management experience" and an "[u]ndergraduate degree in business or related field [was] preferred" (Def.'s Ex. 14.)  Hollon was interviewed for this position by Assistant Division Manager David Hamby ("Hamby").  Hamby then made a recommendation to Rod Workman ("Workman"), the Division Manager of the Atlanta Dvision, who in turn made a recommendation to Mike Pendergrass ("Pendergrass"), the Vice President of the Southern Region.  In evaluating applicants for management positions, CSX considers an applicant's management job performance, educational background, diversity of experience with other positions at CSX and other geographic locations, knowledge of CSX's railroad network, and skills that the candidate would bring to the position.  (Pendergrass Dep. 18:22-19:10.)

Jason Tipton ("Tipton") was selected for the position.  CSX claims Tipton was selected for the position over Hollon because of his management experience and educational background.  (Pendergrass Decl. ¶ 5.)  Tipton had nine years of management experience with CSX in a number of cities, including Mobile, Alabama; Flomaton, Alabama; Columbus, Ohio; and Richmond, Virginia.  Additionally, Tipton had an undergraduate degree in business and an MBA.  (*Id.*)  In comparison, Hollon had five years of management

experience and did not have a college degree.

In April 2006, Hollon applied for the Assistant Terminal Superintendent position in Atlanta. The qualifications for this job included a "[b]achelor degree or equivalent experience" and "extensive knowledge in operating rules." (Def.'s Ex. 15.) Terrence Walton ("Walton"), who is two years younger than Hollon, was selected for the position. (*See* Pendergrass Decl. ¶ 6.) Walton had ten years of management experience and had worked in Jacksonville, Florida, and Waycross, Georgia; he also had a bachelor's degree in engineering and an MBA. (Pendergrass Decl. Ex. B.) Pendergrass claims that Walton was selected because of his superior qualifications. (Pendergrass Decl. ¶ 6.)

Hollon also applied for the Pensacola Trainmaster position. Frank Leyhew ("Leyhew"), the Manager of Professional Recruiting, screened applicants to determine who should be invited to interview. (Leyhew Decl. ¶ 3.) Leyhew claims that Hollon was selected for an interview but that he did not respond to the request for an interview. (*Id.* ¶ 4.) Hollon denies receiving an invitation to interview. (Hollon Decl. ¶ 7.) CSX claims that because Hollon did not respond to the interview request he was not considered for the position. (Leyhew Decl. ¶ 4.)

On May 27, 2006, Hollon sent e-mails to Workman and Bob Frulla ("Frulla") about the positions for which he interviewed. He asked Workman why he "was not considered for the Montgomery or the Atlanta positions? How can I improve my chances of growing with the company?" (Def.'s Ex. 25.) He asked Frulla why the computer system indicated that he

was selected for an interview but was never interviewed. (Def.'s Ex. 24.) Hollon did not receive a response from Workman or Frulla.

In early April 2006, Hollon, Workman, and other employees attended a meeting in Montgomery. Hollon claims that Workman told two management trainees, one of whom was in his twenties and the other in his thirties, "[y]ou all have a bright future with this company." (Hollon Dep. 187:11-13.)  A few minutes later, Workman asked Hollon how old he was. Hollon responded that he was "a little older than the terminal manager." (*Id.* 187:18-19.) Workman told Hollon that he looked good for his age and did not ask the ages of anyone else. (*Id.* 187:19-21.)

## B.    *Hollon is Demoted*

On May 27, 2006, which was the same day that Hollon e-mailed Workman and Frulla, Hollon needed a remote control operator ("RCO") to report to work at the Montgomery terminal.  An RCO is a railroad employee who operates a remote control box that sends signals to a computer that moves a locomotive. (Workman Dep. 16:2-17:12.)  Federal Railroad Administration ("FRA") regulations require that RCOs meet certain requirements. Each RCO is required to have a certification card signed by a qualified supervisor that includes the employee's name and the date when a qualified manager observed the employee operating the remote control locomotive to ensure that the RCO can safely perform the operation.  RCOs are required to carry the certification cards while on duty.  The parties agree that Hollon was not qualified to sign an RCO card.

4

Hollon asked the crew caller to contact J.R. Weeks ("Weeks") because Weeks had previously worked as an RCO. (Hollon Dep. 104:10-14.) Weeks told the crew caller that he had an RCO card but that it had not been signed. (Hollon Dep. 107:5-12.) Hollon then called T.J. Dean ("Dean"), one of Montgomery's two road foremen of engines to tell him that Weeks's card needed to be signed, and Dean told Hollon to sign the card with Dean's name and have Weeks call Dean when he arrived. (*Id.* 111:19-112:4.) When Weeks arrived, Hollon had him call Dean. Hollon then called Dean again because he was still unsure if he should sign the card, and Dean repeated that Hollon should sign the card. (*Id.* 115:10-18.) Hollon signed Dean's name to the card, and when Dean arrived later, he watched Weeks operate the remote control locomotive.

An employee at CSX reported to the FRA that Hollon had signed Dean's name on Weeks's card, and the FRA began an investigation. (*Id.* 124:11-16.) Workman and Pendergrass learned of the incident, and both Hollon and Dean were put out of service while CSX investigated the manner. (Workman Dep. 92:20-93:16.) At the request of the Montgomery Terminal Manager, Hollon prepared a statement in which he admitted signing Dean's name on Weeks's card. (*See* Def.'s Ex. 5.) While the FRA determined that CSX had not violated federal law, Pendergrass decided to demote Hollon and Dean because they had violated CSX's policies. (Pendergrass Decl. ¶ 3.)

On June 19, 2006, Workman and Jack Frost ("Frost"), Human Resources Manager for the Atlanta division, met with Hollon and Dean in Montgomery about the incident.

Workman informed Hollon and Dean that they were being demoted from management positions. Hollon returned to a union position and is currently employed with CSX as a yardmaster.

At that meeting, Hollon handed Workman a draft of an EEOC charge that he had prepared but not yet filed. (Hollon Dep. 156:10-13.) The next day Hollon filed the charge with the EEOC. Hollon alleged that he was passed over for four positions due to his age: Assistant Manager of Customer Operations in Jacksonville, Florida; Terminal Manager in Montgomery, Alabama; Assistant Terminal Superintendent in Atlanta, Georgia; and Trainmaster in Pensacola, Florida. (*See* Def.'s Ex. 17.) Later, Hollon filed an amended EEOC charge, which included a claim of retaliation. (*See* Def.'s Ex. 18.)

On December 11, 2006, Hollon filed a complaint against CSX. On November 30, 2007, CSX filed a Motion for Summary Judgment (Doc. # 17). CSX filed a Motion to Strike (Doc. # 27), asking the court to strike portions of Hollon's affidavit that "contradict his prior testimony and/or that lack foundation in Hollon's personal knowledge." (Mot. Strike 1.)

## II. JURISDICTION AND VENUE

The court exercises jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question). The parties do not contest personal jurisdiction or venue, and the court finds allegations sufficient to support both.

## III. STANDARD OF REVIEW

Summary judgment should be granted only "if the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Under Rule 56, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). The movant can meet this burden by presenting evidence showing there is no genuine issue of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex Corp.*, 477 U.S. at 322-23.

Once the moving party has met its burden, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A genuine factual dispute exists if "a reasonable jury could return a verdict for the non-moving party." *Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1358 (11th Cir. 1999) (internal quotation marks and citation omitted). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of

material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(c).

## IV. DISCUSSION

CSX argues that it is entitled to summary judgment on both Hollon's age

discrimination and retaliation claims.  Each of these claims will be analyzed separately.

### A.    Age Discrimination Claims

Hollon alleges that CSX engaged in age discrimination when he was not selected for

the four positions to which he applied and when he was demoted.[1]  Age discrimination claims

may be established through either direct or circumstantial evidence.  *Damon*, 196 F.3d at

1358.  Hollon claims that he can show CSX intentionally discriminated against him through

both direct and circumstantial evidence.

### 1.    Direct Evidence of Discrimination

Direct evidence of discrimination is "evidence which reflects a discriminatory or

retaliatory attitude correlating to the discrimination or retaliation complained of by the

---

[1] Hollon also asserts that he "applied for and sought numerous promotions" after June 19, 2006, the date on which he presented his EEOC charge to CSX.  (Pl.'s Resp. Br. 6.)  However, these claims are not before the court as his complaint only covers positions Hollon applied for in "April and or May 2006." (Compl. ¶ 9.)  Moreover, Hollon did not raise these later claims in his EEOC charge.  "The starting point of ascertaining the permissible scope of a judicial complaint alleging employment discrimination is the administrative charge and investigation."  *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000).  Even if a claim is not included in the EEOC charge, a court may consider it if the scope of the EEOC investigation "could reasonably be expected to grow out of the charge of discrimination."  *Griffin v. Carlin*, 755 F.2d 1516, 1522 (11th Cir. 1985).  While Hollon's claims involve age discrimination, he has presented no evidence or argument about why the EEOC could reasonably have been expected to investigate these later arising claims.  *See Robinson v. Regions Fin. Corp.*, 242 F. Supp. 2d 1070, 1079-80 (M.D. Ala. 2003). Accordingly, the court limits its analysis to the four positions he applied for in the spring of 2006.

employee." *Id.* at 1358 (internal quotation marks and citation omitted). Direct evidence "must indicate that the complained-of employment decision was *motivated* by the decision-maker's ageism." *Id.* at 1359. "[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age will constitute direct evidence of discrimination." *Id.* (internal quotation marks and citation omitted). "One example of direct evidence would be a management memorandum saying, 'Fire Earley–he is too old." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990).

A statement is not direct evidence if "the comment still requires [the court] to *infer*" that the interest in promoting young employees motivated the decision to demote the plaintiff *Damon*, 196 F.3d at 1359. In *Damon*, the manager who terminated the plaintiff stated that "what the company needed was aggressive *young* men . . . to be promoted." *Id.* The court found this statement was not direct evidence of discrimination because it still required the court to infer that the plaintiff's termination was motivated by the manager's interest in promoting younger workers. *Id.*

Here, Hollon claims that there is direct evidence of discrimination because Workman told two younger employees "[y]ou all have a bright future with this company" and then asked Hollon how old he was. The court finds that this statement is not direct evidence of discrimination. First, Pendergrass, not Workman, made the hiring decisions. Accordingly, Workman's statement is not direct evidence because the court is required to infer that Pendergrass, like Workman, thought these younger employees had a bright future with the

company.  Moreover, even if Workman made the hiring decisions, his statement would not be direct evidence because the court would still have to infer that (1) there is a preference for younger employees and (2) this preference was the reason that Hollon was not selected.[2] Accordingly, the court finds that Workman's statement is not direct evidence of discrimination.

### 2.    Circumstantial Evidence of Discrimination

For a claim of age discrimination based on circumstantial evidence, the *McDonnell Douglas* burden-shifting framework applies.  *See Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1267 (11th Cir. 2001).  For a plaintiff to state a claim for age discrimination based on circumstantial evidence, the plaintiff must present a prima facie case:

> (1) that [he] was a member of the protected group of persons between the ages of forty and seventy; (2) that [he] was subject to adverse employment action; (3) that a substantially younger person filled the position that [he] sought or from which [he] was discharged; and (4) that [he] was qualified to do the job for which [he] was rejected.

*Damon*, 196 F.3d at 1359.  "If a plaintiff establishes a prima facie case of discrimination, the defendant employer must articulate a legitimate, nondiscriminatory reason for the challenged employment action."  *Chapman v. AI Trans.*, 229 F.3d 1012, 1024 (11th Cir. 2000).  The burden then shifts back to the plaintiff to show that the defendant's stated reason is a pretext:

---

[2] Hollon relies on *Fakete v. Aetna, Inc.*, 308 F.3d 335 (3d Cir. 2002), to support his claim that he has presented direct evidence of discrimination.  In *Fakete*, the Third Circuit determined that a reasonable jury could find that the plaintiff's age was a substantial factor in the defendant's decision to fire him when a manager stated that he preferred younger, single employees while discussing the plaintiff's future with the company.  *Fakete*, 308 F.3d at 339-40.  Here, Workman's statement did not express a direct preference for younger employees and was not made during a one-on-one conversation about Hollon regarding his future with CSX.

"In other words, the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997). "[The plaintiff] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

### a.    Assistant Manager of Customer Operations

The first position Hollon applied for was the Assistant Manager of Customer Operations position. However, the evidence shows that at the time Hollon applied for the position, CSX had already filled the available position. (Callahan Decl. ¶ 4.) The Eleventh Circuit has stated that to state a prima facie case a plaintiff must show that "he or she was qualified for and applied for a position that the employer was seeking to fill." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 768 (11th Cir. 2005). Hollon has failed to establish a prima facie case because he has not established that he applied for an available position.

### b.    Montgomery Terminal Manager

Hollon's second claim involves his non-selection for the Montgomery Terminal Manager position. The court assumes Hollon has stated a prima facie case. CSX asserts that it did not select Hollon because he was not the most qualified candidate for the position. The

court finds that CSX has proffered a legitimate, non-discriminatory reason, and thus the burden shifts to Hollon to prove that the stated reason is a pretext.

First, Hollon asserts that the stated reason is pretextual because he, in fact, was the more qualified candidate. When a plaintiff claims that he is the better qualified candidate, he must adduce evidence "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Lee v. GTE Fla., Inc.*, 226 F.3d 1249, 1254 (11th Cir. 2000) (internal quotation marks and citation omitted). The Eleventh Circuit has reiterated that "[t]he relevant issue here . . . is not whom we would determine to be better qualified for the job." *Cooper v. S. Co.*, 390 F.3d 695, 732 (11th Cir. 2004).

From the evidence before it, the court cannot conclude that Hollon has shown such a disparity in qualifications to establish pretext. One of the factors CSX considered was the applicant's management experience in other CSX positions and geographic locations. While Hollon has five years of management experience in Montgomery, Alabama, Tipton had nine years of management experience in Atlanta, Georgia; Mobile, Alabama; Flomaton, Alabama; Columbus, Ohio; and Richmond, Virginia. Additionally, an undergraduate degree in business was a preferred qualification. Tipton had an undergraduate degree in business and an MBA, while Hollon had not completed college. The court simply cannot conclude that no reasonable person could have selected Tipton instead of Hollon.

Hollon also asserts that Workman's comments establish pretext. The Eleventh Circuit

has held "that comments by non-decisionmakers do not raise an inference of discrimination, especially if those comments are ambiguous." *Mitchell v. USBI Co.*, 186 F.3d 1352, 1355 (11th Cir. 1999); *see also Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1229 (11th Cir. 2002) (finding that "[a]lthough a comment unrelated to a termination decision may *contribute* to a circumstantial case for pretext . . . it will usually not be sufficient absent some additional evidence supporting a finding of pretext" (internal citation omitted)).

Here, Hollon alleges that Workman told two younger employees, "You all have a bright future with this company" and then asked Hollon how old he was. These statements are too attenuated to establish pretext. First, Workman was not the decision-maker; he made a recommendation to Pendergrass who decided which applicant to hire. Moreover, it is not clear that Workman's statements establish an age bias. The comments were made at a meeting and not in the context of hiring and firing. Moreover, Workman told management trainees that they had a bright future with the company, which does not necessarily establish an age bias but may instead reflect his belief that those individuals will do well with the company regardless of their ages. Workman asking Hollon his age does not establish an age bias because it was unrelated to a hiring decision. Given that Workman did not make the final hiring decision and that his statements do not evince a preference for younger employees, the court cannot conclude that they establish pretext.

### c.    Atlanta Assistant Terminal Superintendent Position

Hollon fails to establish a prima facie claim with regard to the Atlanta Assistant

Terminal Superintendent Position because he has not shown a substantially younger person was hired.  Walton, who was hired for the position, is only two years younger than Hollon.[3] (Pendergrass Decl. ¶ 3.)  The Eleventh Circuit held that a plaintiff failed to state a prima facie case for age discrimination "where the replacement was only two years younger than [the plaintiff], there was no direct proof of discriminatory intent, and no statistical evidence showing a pattern of discriminatory activity."  *Pace v. S. Ry. Sys.*, 701 F.2d 1383, 1390 (11th Cir. 1983).  Because Hollon has not shown direct proof of discriminatory intent or statistical evidence establishing a pattern of discriminatory activity, the two-year age difference here is insufficient to establish that a substantially younger person was hired.

d.    **Pensacola Trainmaster**

The fourth position that Hollon applied for was the Trainmaster position in Pensacola, Florida.  CSX claims that it offered Hollon the opportunity to interview for the position but that Hollon failed to respond and accordingly was not interviewed.  Hollon contends that he never received an invitation to interview.  CSX argues that Hollon failed to state a prima facie case because he did not apply for the position.  The court need not resolve this issue because even if Hollon did state a prima facie case, CSX proffered a legitimate, non-discriminatory reason for not hiring him.  CSX claims that it did not hire Hollon because he did not respond to its interview request.  Accordingly, the burden shifts to Hollon to show

---

[3]  In his affidavit, Hollon stated that Walton was "several years younger than I."  (Hollon Aff. ¶ 6.)  This statement does not create a dispute as to whether Walton is two years younger than Hollon because a two year age difference is consistent with Hollon's statement and Hollon testified in his deposition that he did not know Walton's age.

that the stated reason is pretextual, but Hollon has not met his burden.  The only evidence

Hollon can point to that could establish pretext are Workman's statements.  As explained

above, these statements do not establish pretext.  Moreover, Workman had no role in the

selection for this position.  Workman made recommendations to Pendergrass for jobs in the

*Atlanta* division, but the position was based in the *Jacksonville* division.  Thus, Workman's

statements are even less relevant here.

### e.    **Hollon's Demotion**

Hollon also contends that he was discriminated against based on his age when he was

demoted.  Because Hollon has not provided direct evidence of discrimination, the court again

uses the *McDonnell-Douglas* framework.  Assuming that Hollon has stated a prima facie

case, he has failed to demonstrate that CSX's stated reason for the demotion, his violation

of a company policy by forging Dean's signature, was a prextext.

CSX has proffered a legitimate, non-discriminatory reason for demoting Hollon.

Hollon signed Dean's name to Weeks's FRA certification card, which violated CSX's ethical

code.  Hollon counters that CSX's response was too harsh, considering that the FRA did not

find a violation of federal law.  However, Hollon's opinion that CSX acted too harshly does

not establish pretext.  "The employer may fire an employee for a good reason, a bad reason,

a reason based on erroneous facts, or for no reason at all, as long as its action is not for a

discriminatory reason." *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th

Cir. 1984).  The court finds that on its face CSX's stated reason for demoting Hollon does

not suggest a discriminatory animus.

Hollon also claims that CSX's reasons were pretextual because CSX has not demoted other employees who forged documents. Hollon contends that CSX has in the past instructed employees to forge information by logging trains in at Montgomery when they were in other locations and that demotions have not resulted from those actions. Hollon also claims that Ken Williams, a CSX employee, signed another employee's name on an FRA card and was not demoted. Hollon admits that he does not know whether this incident was reported to management.

A plaintiff can establish pretext by showing that a comparator, meaning a similarly situated employee, was treated differently. For Hollon to use this type of comparator evidence, "the comparator's misconduct must be nearly identical to the plaintiff's in order to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001) (internal quotation marks and citation omitted). The Eleventh Circuit has emphasized that "[t]he most important factors in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed." *Id.* (internal quotation marks and citation omitted).

Here, Hollon has not established that the comparator's misconduct was nearly identical to his. Hollon has not shown that Pendergrass, who made the decision to demote him, was aware of any of these other incidents. *See Knight v. Baptist Hosp. of Miami, Inc.*,

16

330 F.3d 1313, 1317 n.5 (11th Cir. 2003) (finding that for an employee to be considered similarly situated when comparing disciplinary actions the supervisor must have been aware of the conduct). Hollon also has not provided enough evidence about the comparators, such as the names of those involved and the dates on which the incidents occurred, for the court to find pretext. *See Roberts v. Design & Mfg. Servs., Inc.*, 167 Fed. Appx. 82, 85 (11th Cir. 2006) (finding plaintiff's claim that he was punished more harshly than other employees who had copied company documents did not establish pretext when the plaintiff failed to identify the other individuals and only made the statement in his affidavit). For comparator evidence to establish pretext, it must present nearly identical situations, and Hollon has failed to put forth such evidence.

Hollon also asserts that Workman's comments establish a pretext. Again, for the reasons previously discussed, the court finds that these statements do not establish that CSX's stated explanation for the demotion were pretextual. The court concludes that CSX is entitled to summary judgment as to Hollon's age discrimination claims.

**B.    *Retaliation Claim***

Hollon also claims that CSX improperly retaliated against him. The retaliation statute provides:

> It shall be unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful by this section, or because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

29 U.S.C. § 623(d).  To state a prima facie retaliation claim, "a plaintiff must show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression." *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002).  The same burden shifting framework applies here that applied to the age discrimination claim.  *See Goldsmith v. City of Atmore*, 996 F.2d 1155, 1162-63 (11th Cir. 1993) (applying burden shifting analysis).

Hollon claims that he was retaliated against (1) because he sent Frulla and Workman e-mails asking why he was not selected for the positions he applied for and (2) because he discussed CSX's promotion practices with other employees, including encouraging another employee to file a complaint with the EEOC because he was denied a promotion.

### 1.    E-mail Complaints

CSX claims that Hollon was not engaged in protected activity when he e-mailed Workman and Frulla.  The e-mails Hollon sent do not constitute protected activity because Hollon never mentioned age discrimination.  *See Smith v. Wynfield Dev. Co., Inc.*, 451 F. Supp. 2d 1327, 1349 (N.D. Ga. 2006) (finding plaintiff had not engaged in protected activity when plaintiff complained to supervisor about not being able to work extra hours but never complained about being passed over to work extra hours in favor of younger employees).  The court finds that Hollon failed to establish he engaged in statutorily protected expression, and thus his prima facie case regarding retaliation for his complaints fails.

18

### 2. Encouraging Co-Worker

CSX claims that Hollon failed to state a prima facie case as to his allegations that he was retaliated against for discussing CSX's promotion practices and encouraging a co-worker to file an EEOC charge because Hollon has not shown a causal connection. The Eleventh Circuit has broadly interpreted the causation link: "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994) (internal quotation marks and citation omitted). However, the Eleventh Circuit has recognized that there does need to be some connection. "At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action. The defendant's awareness of the protected statement, however, may be established by circumstantial evidence." *Goldsmith*, 996 F.2d at 1163 (citations omitted).

While Hollon may have had these discussions with other employees, Hollon has not presented any evidence that CSX was aware of these comments. Indeed, Hollon does not know if the other employees told anyone about the conversations. (Hollon Dep. 258:22-259:7.) Because Hollon has not carried his burden of establishing that CSX was aware of his protected activities, he has failed to state a prima facie claim of retaliation as to this activity.

### 3. Pretext

Even if Hollon could establish a prima facie case for retaliation, CSX would still be

entitled to summary judgment. CSX claims that it demoted Hollon for forging Dean's signature in violation of a company policy, which is a legitimate, non-retaliatory reason for his demotion. Moreover, any inference that retaliation motivated CSX is countered by the fact that Dean was also demoted for the same incident. As described above, Hollon has not shown that this reason is pretextual. CSX is entitled to summary judgment as to Hollon's retaliation claim.

## V.  CONCLUSION

Accordingly, it is ORDERED that :

1. Defendant's Motion for Summary Judgment (Doc. # 17) is GRANTED, and all claims are DISMISSED with prejudice.

2. Defendant's Motion to Strike (Doc. # 27) is DENIED as moot.

An appropriate judgment will be entered.

DONE this 22nd day of May, 2008.

       /s/   W.  Keith Watkins
UNITED STATES DISTRICT JUDGE

A copy of this checklist is available at the website for the USCA, 11th Circuit at www.ca11.uscourts.gov
Effective on April 9, 2006, the new fee to file an appeal will increase from $255.00 to $455.00.

## CIVIL APPEALS JURISDICTION CHECKLIST

1.  **Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by statute:

    (a)  **Appeals from final orders pursuant to 28 U.S.C. § 1291:** Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C.§ 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. v. Mestre, 701 F.2d 1 365, 1 368 ( 11th Ci r. 1 983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. § 636(c).

    (b)  **In cases involving multiple parties or multiple claims,** a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b). Williams v. Bishop, 732 F.2d 885, 885- 86 (11th Cir. 1984). A judg ment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S.196, 201, 108 S.Ct. 1717, 1721-22, 100 L .Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

    (c)  **Appeals pursuant to 28 U.S.C. § 1292(a):** Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions . . ." and from "[i]nterlocutory decrees . . . determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

    (d)  **Appeals pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5**: The certification specified in 28 U.S.C. § 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

    (e)  **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

*Rev.: 4/04*

2.  **Time for Filing**: The timely filing of a notice of appeal is mandatory and jurisdictional. <u>Rinaldo v. Corbett</u>, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P. 4(a) and (c) set the following time limits:

    (a)  **Fed.R.App.P. 4(a)(1):** A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD – no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

    (b)  **Fed.R.App.P. 4(a)(3):** "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

    (c)  **Fed.R.App.P. 4(a)(4):** If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

    (d)  **Fed.R.App.P. 4(a)(5) and 4(a)(6):** Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

    (e)  **Fed.R.App.P. 4(c):** If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3.  **Format of the notice of appeal:** Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. <u>See</u> also Fed.R.App.P. 3(c). A <u>pro se</u> notice of appeal must be signed by the appellant.

4.  **Effect of a notice of appeal:** A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).